Jimmie D. and Cheryl **RODGERS** and Jim's Water Service, Inc., Plaintiffs,

v.

Larry R. **HYATT**, Defendant.

Civ. A. No. 79–C–461/462.

United States District Court, D. Colorado.

Nov. 17, 1980.

Joseph H. Thibodeau, Denver, Colo., for plaintiffs.

Michael J. Kearns, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Stanley L. Drexler, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

THIS MATTER is before the Court on the plaintiffs' motions to compel discovery of certain Internal Revenue Service (IRS) documents. The plaintiffs filed two lawsuits in this Court seeking to enjoin[1] alleged violations by the defendant of 26 U.S.C. section 6103,[2] and asking damages[3] for a past disclosure of return information, pursuant to section 6103 and 26 U.S.C. section 7217.

Upon receiving the plaintiffs' requests for documents, the government objected to producing many of them. In response to the plaintiffs' motion to compel, the government has submitted the documents to the Court for *in camera* inspection. The Court has reviewed the documents and is now prepared to rule.

*Nature of the Requests for Production.*

The plaintiffs' requests for production of documents seek, in pertinent part, the following documents regarding IRS construction and interpretation of sections 6103 and 7217, and regulations thereunder:

1. Civil Action No. 79–C–461

2. Section 6103 provides in pertinent part:
    "(a) General Rule. Returns and return information shall be confidential, and except as authorized by this title—
    (1) no officer or employee of the United States,
    \* \* \* \* \* \*
    shall disclose any return or return information obtained by him in any manner in connection with his service as an officer or employee or otherwise. . . ."

3. Civil Action No. 79–C–462.

4. Section 6103(k)(6) provides:

"(1) The Internal Revenue Service 'A' (Administrative) files appertaining to sections 6103 and 7217 of the Internal Revenue Code of 1954, as amended.

"(2) Any and all other Internal Revenue Service writings, memoranda, files and data appertaining to the Service's interpretation of the references section of the Code and its promulgation of the Regulations thereunder."

These requests were later limited to documents relating to sections 6103(k)(6)[4] and 7217, since the defendant's defense relies at least in part on section 6103(k)(6).

In addition, the plaintiffs seek production of "[a]ll other reports of all other Internal Revenue Service (Inspection Service) investigations, without limitation, of any and all other conduct, speech and/or activity of Mr. Hyatt, occurring at any time and place."

As grounds for their motion to compel discovery of the documents relating to sections 6103 and 7217, the plaintiffs argue that these IRS documents are relevant because they "will be of inestimable value and assistance in providing enlightenment to counsel and fact finder (the Court and/or jury) in connection with ascertaining the true meaning and intent of the pertinent Code provisions and regulations, and are squarely within the parameters of permissible discovery under the Federal Rules of Civil Procedure."

In further support of their argument, the plaintiffs assert that these documents are "administrative staff manuals and instruc-

"(6) An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation."

tions to staff that affect a member of the public," and as such are available under the Freedom of Information Act, 5 U.S.C. section 552(a)(2)(C).

In response, the government asserts that the documents are irrelevant to the case and that virtually all are protected by the attorney-client privilege or the "governmental" or "deliberative process" privilege. In addition, the government contends that certain documents are also protected by the attorney "work product" rule, or the exemption from disclosure set out in section 6103(a).[5]

The plaintiffs argue that the inspection reports from prior investigations of defendant Hyatt's conduct are relevant for impeachment and to show the defendant's willfulness. The plaintiffs contend that the defendant's "conduct and compliance with administrative procedures in other cases are evidence of his willfulness and/or negligence with respect to these plaintiffs." In essence, the government argues that these reports, involving other incidents, are unrelated to this case for any purpose.

### General Description of the Documents.

One hundred sixty-six documents, consisting of 1,154 pages, plus four inspection reports totalling 381 pages, have been submitted for this *in camera* inspection.

The first 166 documents relate to the plaintiffs' requests for all writings pertaining to sections 6103(k)(6) and 7217. These include drafts of proposed regulations to be promulgated under section 6103(k)(6); discussions between IRS attorneys and other IRS personnel, including legal advice, regarding the advisability of certain language and provisions in proposed regulations; requests from agency personnel for advice and legal opinions regarding particular disclosure problems arising under section 6103(k)(6) and responses to those requests; requests for clarification and interpretation of the language of section 6103(k)(6), and responses to those requests, in the context of particular fact situations; discussions between agency personnel and agency attorneys regarding the issues arising in the context of 6103(k)(6) disclosures, and advice and opinions as to the treatment of those issues; and similar intra-agency communication. Some relate to particular cases and discuss particular taxpayers.

### Standard to be Applied.

Since this is a motion to compel discovery under the Federal Rules of Civil Procedure, the scope of discovery is governed by Rule 26(b): the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." This rule is to be liberally interpreted and is so interpreted in this Court.

Besides asserting that the documents sought fall within the foregoing standard, the plaintiffs have argued that they are entitled to disclosure under the Freedom of Information Act, 5 U.S.C. section 552(a)(2)(C). Implicit in this assertion is the argument that section 552(b)(5), which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," does not apply.

■ Of course this is not a Freedom of Information Act case. Freedom of Information Act cases have consistently recognized that section 552(b)(5) (Exemption 5), "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). Admittedly, many of the Freedom of Information Act cases have clarified and delineated these privileges. *E. g., Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *NLRB v. Sears, Roebuck & Co., supra; EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Nonetheless, the plaintiffs are not permitted in this civil

---

**5.** *See* footnote 2, *supra.*

litigation discovery context, to force production of all documents which would have to be disclosed in a Freedom of Information Act suit. They are here limited to documents which are relevant or reasonably calculated to lead to the discovery of admissible evidence. F.R.Civ.P. 26(b), *supra.* Therefore it is that two pronged test that must be met.

*Relevance of the Documents Requested, or Likelihood of Leading to Admissible Evidence.*

### A. Documents Relating to §§ 6103(k)(6) and 7217.

To evaluate the potential relevance of these documents, it is necessary first to discuss briefly the issues here raised. The plaintiffs, as stated in their proposed pretrial order, claim that the defendant Hyatt disclosed to certain persons "tax return information" regarding the plaintiffs, in violation of section 6103(a).

The defendant denies that he made the disclosure, and raises defenses based on section 6103(k)(6) and 7217(b). Section 6103(k)(6), modifying the disclosure prohibition of section 6103(a), provides:

"An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation."

Section 7217(b) states that no liability shall arise from any section 6103(a) disclosure "which results from a good faith, but erroneous, interpretation of section 6103."

Thus, the instant case presents these issues: (1) whether the defendant disclosed return information in violation of section 6103(a), and (2) if such information was disclosed, whether the defendant can avoid liability by successfully proving defenses to statutory liability. Apparently, the defendant's asserted defense under section 7217(b) rests on his claim of "good faith but erroneous interpretation" of subsections (a) and/or (k)(6) of section 6103.

In a case thus postured, this Court cannot perceive how any of the documents examined *in camera* are even tangentially relevant; nor do any of them appear even remotely calculated to lead to admissible evidence.

It must be emphasized that the Internal Revenue Service is not here on trial. This case involves one particular incident of allegedly unlawful disclosure, and the accused agent's defenses to the plaintiffs' claims. If any of the documents contained instructions to the defendant, or to a group of individuals including the defendant, regarding application of section 6103(k)(6) and the regulations thereunder, they would plainly be relevant. As far as the Court can determine, however, none of these documents is of that nature.

As the above stated general description of the documents indicates, they deal with "administrative rule-making history"—documents which reflect the interplay between agency personnel prior to enactment of regulations under 6103(k)(6)—and with particular disclosure problems and the applicability of the 6103(k)(6) exemption in those particular situations. Plaintiffs' counsel has not explained how such documents, although evidence of the agency's "state of mind" or the knowledge or opinions of particular personnel, are relevant to the defendant Hyatt's state of mind when he undertook to determine (if indeed he did) whether a particular disclosure was permissible under section 6103(k)(6). To the extent that liability in this case turns on the defense of "good faith but erroneous interpretation of section 6103(k)(6)," the "good faith" and "erroneous interpretation" are

those of *this individual defendant.* None of the documents can be relevant to that inquiry.

Another possible argument which can be gleaned from the plaintiff's motion to compel is apparently that since section 6103(k)(6) provides an exemption upon which the defendant may rely, the "meaning and intent" of section 6103(k)(6), and regulations promulgated thereunder, must be determined in order for the Court to be able to decide whether the defendant "erroneously" interpreted it. The plaintiffs argue that the documents constitute "administrative history" which casts light on the IRS's intent in promulgating regulations under the section, and thus on the "true meaning" of the regulations.

Interpretation of section 6103(k)(6), and the regulations promulgated pursuant to it, presents questions which are primarily if not exclusively questions of law. Of course, administrative construction of both the statute and the agency's regulations is entitled to great weight in the Court's determination of their meaning and scope. *See, generally,* Davis, *Administrative Law Treatise* (2d Ed. 1979), section 7:22.

■ This, however, is not the type of case in which *the agency's* construction and interpretation of the statute and regulations are really at issue. It is true that one issue presented by a defense under section 7217(b) is whether the defendant "erroneously" construed either section 6103(k)(6) or section 6103(a). But section 7217 provides liability only for "knowing," "negligent," or (if a plaintiff seeks punitive damages) "willful" or "grossly negligent" disclosures. Thus, liability is consistently tied in to the *defendant's state of mind* regarding agency interpretation, not to the actual agency interpretation. As already noted, none of the submitted documents relate to the issue of the defendant's state of mind.

■ Finally, to the extent that the plaintiffs seek to inspect the documents for the purpose of tendering some or all as evidence of "legislative-administrative history," the Court's own inspection reveals that none of the documents is relevant for that purpose. Under section 6103(k)(6), and the regulations promulgated thereunder,[6] the key question is whether the disclosure is made to obtain information which is not "otherwise reasonably available" in the circumstances of the particular case. No information in the submitted documents could reasonably be construed to shed light on this factual inquiry. There is nothing inherently ambiguous in the statutory or regulatory standards to be applied. Nor would anything in the documents aid the Court in "interpreting" this straightforward language. Therefore the agency's general internal communications regarding compliance with section 6103 and regulations to specify procedures to be followed, and communications regarding particular situations not involving the defendant, are not within the scope of discovery permitted by Rule 26(b).

#### B. The Inspection Reports.

■ The four inspection reports regarding prior IRS investigations of the defendant's conduct are also irrelevant and beyond the scope of Rule 26. None of the prior incidents involved allegedly unlawful disclosures of return information, nor do any of them deal even tangentially with the defendant's possible state of mind regarding the incidents here alleged. Disclosure of these reports would constitute an unwarranted invasion of the defendant's privacy for no conceivable purpose.

#### The "Governmental" or "Deliberative" Privilege.

Even if the documents involved here[7] were relevant or reasonably calculated to lead to the discovery of admissible evidence, Rule 26 would limit their discovery to matters "not privileged." The Court declines to decide all the privilege issues raised by the

---

6. 26 C.F.R. section 404.6103(k)(6)–1.

7. This section deals only with the documents regarding section 6103(k)(6) and 7217, not the inspection reports.

government, since it is not strictly necessary in light of the holding regarding relevance and capacity to lead to admissible evidence. As an alternative ground of decision, however, the Court notes that all of the documents except numbers 6 and 113 are clearly covered by the "governmental" or "deliberative" privilege as it has been delineated by the courts.

This Court is cognizant of, and heartily agrees with, the concerns expressed by Chief Judge Winner in *Equal Employment Opportunity Commission v. Los Alamos Constructors, Inc.*, 382 F.Supp. 1373 (D.N.M. 1974). However, as Chief Judge Winner there noted, "[w]hen the government or one of its agencies comes into court . . . it is to be treated in exactly the same way as any other litigant."[8] In this case the *government* validly asserts a legitimate privilege long recognized by the federal courts.

As noted above, several recent Supreme Court cases arising under the Freedom of Information Act have acknowledged the validity of this common law privilege. *Renegotiation Board v. Grumman Aircraft, supra; NLRB v. Sears, Roebuck & Co., supra; EPA v. Mink, supra.* The Court summarized the scope and rationale of the privilege as follows:

"The cases uniformly rest the privilege on the policy of protecting the 'decision making processes of government agencies,' *Tennessean Newspapers, Inc. v. FHA*, 464 F.2d 657, 660 (CA6 1972); *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318 (DC 1966); *see also EPA v. Mink, supra*, at 86–87; *International Paper Co. v. FPC*, 438 F.2d 1349, 1358–1359 (CA2 1971); *Kaiser Aluminum & Chemical Corp. v. United States*, [141 Ct.Cl. 38, 157 F.Supp. 939, 946 (1958)]; and focus on documents 'reflecting advisory opinions, recommendations and deliberations comprising of a process by which governmental decisions and policies are formulated.' *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, supra*, at 324. . . .

"Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decision-maker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed. Accordingly, the lower courts have uniformly drawn a distinction between pre-decisional communications, which are privileged [citations and footnote omitted]; and communications made after the decision and designed to explain it, which are not [footnote omitted]." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 150–52, 95 S.Ct. at 1516–17.

In addition, as the Court recognized in a footnote to *NLRB v. Sears, Roebuck & Co.* :

"Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." *Id.*, at 151, n. 18, 95 S.Ct. at 1517.

See also, the thorough discussion of this privilege in *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, supra.*

■ This Court has examined the submitted documents carefully in light of the foregoing principles and has concluded that

**8.** *Id.*, 382 F.Supp. at 1375.

every one, with the exception of numbers 6 and 113,[9] fall within the privilege. The documents either contain agency deliberations—in the form of legal opinions, suggestions, proposals, proposed draft regulations, and other communications not finally adopted as a whole—or intra-agency communications evaluating the proper scope of section 6103(k)(6), and the policy considerations in making agency decisions as to particular cases under that section. All of these communications constitute part of the "mental processes" of the agency, and none are "postdecisional explanations" of policy as contemplated by the Supreme Court in *NLRB v. Sears, Roebuck & Co., supra.*

In order to have a clear record for the purposes of appeal, the parties are entitled to findings with regard to applicability of this privilege to each document at issue. For this purpose, the Court has reviewed the Appendix to the government's Supplemental Memorandum of Law filed May 1, 1980, and finds that it accurately represents the content of each document. Given the thoroughness and accuracy of that Appendix, the Court adopts it for the purposes of this decision and will append a copy as part of this Memorandum Opinion and Order. This adoption is with the limitation that the Court accepts it only for the purpose of deciding the scope of the "deliberative" privilege applied herein, and not for the purpose of any other asserted privileges.

In accordance with the foregoing, it is

ORDERED that discovery of the documents submitted for *in camera* inspection is DENIED with the exception of document Number 6, which was published and already available to the plaintiffs.

IT IS FURTHER ORDERED that the documents submitted for *in camera* inspection shall be kept sealed by the Clerk of the Court and not opened except upon order of this Court or the United States Court of Appeals for the Tenth Circuit.

9. *See* description of these documents in the Appendix to this opinion. [Omitted for purposes of publication.]