## ASSOCIATION FOR REDUCTION OF VIOLENCE, Plaintiff,

v.

## Frank A. HALL, et al., Defendants.

## Civ. A. No. 78-3234-MC.

United States District Court,
D. Massachusetts.

March 8, 1983.

Albert Blake, pro se.

Hale & Dorr, David Mortensen, Ronald A. Witmer, Boston, Mass., court-appointed, for Albert Blake.

Lee Carl Bromberg, Boston, Mass., Michael Donahue, Sheridan, Garrahan & Lander, Framingham, Mass., for defendants.

### MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This is an action brought under 42 U.S.C. § 1983. The plaintiffs are present or former inmates at M.C.I. Walpole and members of the Association for Reduction of Violence (ARV). They allege that the de-

fendants, present or former officials of the Department of Corrections, have deprived them of educational programs contrary to the provisions of M.G.L. c. 127, § 48, in violation of their due process rights. In addition, the plaintiffs complain that plaintiffs Frank Grace and Albert Blake were transferred from M.C.I. Walpole to federal institutions in retaliation for the exercise of First Amendment rights by those plaintiffs. They allege that the transfers deprived Blake and Grace of access to the courts of Massachusetts and deprived other inmates who relied on Blake's legal skills of access to the courts.

## PRIOR PROCEEDINGS

In December of 1980, I granted partial summary judgment to the defendants on claims relating to the institution, extension, and initial purpose of the lockup at M.C.I. Walpole which serve as the basis for the claims of the plaintiffs. At that time, I denied the defendants' motion for summary judgment on the plaintiffs' claim that Massachusetts statutes and regulations create an entitlement to participation in ARV educational programs, thereby implicating due process concerns. I also denied the motion as it related to the claims of retaliatory transfer; however, I indicated that the denial was without prejudice to the renewal of the motion after both parties had an opportunity to conduct discovery.

In February of 1981, after three days of testimony by Blake, Grace, and Michael Fair, then Deputy Commissioner of Corrections, I denied the plaintiffs' application for a preliminary injunction which would have ordered the return of Blake and Grace to the Massachusetts prison system. That denial was based upon my finding that there was no reasonable likelihood of success on plaintiffs' claim of retaliatory transfer.

Finally, on February 19, 1982, after an *in camera* inspection of various documents produced by the defendants, I ordered that those documents not be turned over to the plaintiffs.

The defendants have now renewed their motion for summary judgment on the retaliation claims of the plaintiffs and for reconsideration of the finding that Massachusetts

statutes and regulations created an entitlement implicating due process concerns.

## LEGAL STANDARD

In determining whether summary judgment is appropriate in this case, I must review the record in the light most favorable to the plaintiffs and indulge all inferences in their favor. *See Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). I am mindful, however, that "the requirement of a 'but for' showing together with the wide latitude afforded prison officials in ordering transfers may make summary judgment particularly appropriate." *McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir. 1979).

The record in this case is extensive. In addition to the pleadings, affidavits, answers to interrogatories, and the numerous depositions on file, I have reviewed the transcripts of the three-day preliminary injunction hearing. Finally, I have again reviewed the documents which were the subject of the memorandum and order of February 19, 1982, denying plaintiffs' motion for production.

After carefully searching that extensive record and indulging all inferences in the plaintiffs' favor, I conclude that summary judgment in favor of the defendants is appropriate on the retaliatory transfer issue; I will deny, however, the defendants' motion for reconsideration of the decision that the Massachusetts statutes and regulations create an entitlement to educational programs.

## RETALIATORY TRANSFER CLAIM

■ The plaintiffs contend that the decisions to transfer Blake and Grace were made in retaliation for the exercise by those plaintiffs of constitutionally protected rights under the First Amendment. While an inmate may be transferred for no reason at all, *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), "he may nevertheless establish a claim under § 1983 if the decision to transfer him was made by reason of his exercise of constitutionally protected First Amendment freedoms." *McDonald v. Hall,* 610 F.2d at 18 (1st Cir.1979).

In order to prevail on such a claim, the plaintiffs ultimately must establish that they would not have been transferred "but for" the exercise of their First Amendment rights. *Id.*

■ It is not disputed by the defendants that Blake and Grace engaged in various activities protected by the First Amendment throughout their confinement at M.C.I. Walpole. The plaintiffs say that it was in retaliation for those activities that they were transferred from Walpole. They, however, have produced nothing, not even the promise of any evidence, which would indicate a retaliatory motivation on the part of the defendants.

After reviewing the entire record in this case, I can find no support for the plaintiffs' contentions of retaliatory transfer. I am still of the opinion today, as I was on February 17, 1981, that

> The evidence ... presents a picture of action taken by the authorities in this case that has nothing to do with retaliation. It involves the receipt of information at a time of great tension at Walpole, information which might require, not simply justify, a transfer of these particular individuals. The status of these two men as leaders of segments of the population at Walpole and the information received by the authorities as to their alleged activities at a time of peril ... militate against a motive of retaliation. They point in the direction of a necessary conclusion (regardless of the truth or falsity of the information, so long as it was accepted as true) that the

transfers were essential in carrying out the duties of the Corrections department officials, to preserve the safety of inmates and other persons inside MCI Walpole, and to maintain security which was then threatened.

> Statement of Reasons for Denial of Preliminary Injunction, slip op. at 4 (February 17, 1981).

Despite the extensive discovery engaged in since then, the plaintiffs have been unable to produce a scintilla of evidence, or even a promise of any evidence, that would form the basis of a permissive inference that their transfers were retaliatory and would not have taken place "but for" the exercise of their constitutionally protected rights.

For the foregoing reasons, the defendants are entitled to summary judgment on the retaliatory transfer issue.

## ENTITLEMENT CLAIM

■ In December of 1980, I denied defendants' motion for summary judgment relating to the plaintiffs' claim that Massachusetts statutes and regulations created an entitlement to participation in ARV programs implicating due process concerns.

I will deny the defendants' renewed motion for summary judgment as it relates to that claim. The mandatory language contained in M.G.L. c. 127, § 48 [1] creates more than a mere hope or expectancy that educational programs will be provided. The provisions of that section amount to an entitlement, the deprivation of which implicates due process considerations.

I am of opinion, however, that that section does not entitle the plaintiffs to any

---

1. M.G.L. c. 127, § 48 reads:

The commissioner shall establish and maintain education, training and employment programs for persons committed to the custody of the department. The administrators of county correctional facilities shall establish and maintain such programs for persons committed to such facilities. Such programs shall include opportunities for academic education, vocational education, vocational training, other related prevocational programs and employment, and may be made available within correctional facilities or, subject to the restrictions set forth in sections forty-nine and eighty-six F, at other

places approved by the commissioner or administrator. In determining which employment programs to establish and maintain under the authority of this section, the commissioner or administrator shall take into account, first, the training value of the program, second, the job market and employment conditions in the community and third, in the case of programs to be carried out within a correctional facility, the types of goods and services required by the commonwealth and its subdivisions.

The commissioner shall make and promulgate rules and regulations governing programs established under this section which

*particular* educational program. The commissioner is not required to provide programs of the inmates' own choice; he is simply required to establish educational programs. There is a factual dispute as to what extent the commissioner used the ARV programs to meet his obligations under § 48. The plaintiffs say that the ARV programs were the only programs at Walpole and that the commissioner met his obligations under § 48 only through those programs. Defendants contend that there were and are other programs at Walpole which meet the statutory requirements. Whether that is so is an issue which must be determined by the trier-of-fact. To the extent, then, that the plaintiffs assert entitlement to *specific* educational programs, such as those provided by the ARV, their claim must fail. Their complaint, however, does state a claim for deprivation of state-created entitlement, thereby implicating due process concerns. I will, therefore, deny the defendants' renewed motion for summary judgment relating to that claim.

shall include provisions for hours, conditions of employment, wage rates for employment program participants, incentive payments for education and training program participants, and deductions from said wages pursuant to the provisions of section eighty-six F.