ASSOCIATION FOR REDUCTION OF
VIOLENCE, et al., Plaintiffs,
Appellants,

v.

Frank A. HALL, et al., Defendants,
Appellees.

No. 83–1515.

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1984.

Decided May 9, 1984.

Ronald A. Witmer, Boston, Mass., with
whom Robert W. Thuotte, and Hale and

Dorr, Boston, Mass., were on brief, for appellants.

Michael C. Donahue, Sp. Asst. Atty. Gen., Boston, Mass., with whom Sheridan, Garrahan & Lander, Framingham, Mass., Lee Carl Bromberg, Sp. Asst. Atty. Gen., and Bromberg, Sunstein & McGregor, Boston, Mass., were on brief, for appellees.

Before COFFIN, ALDRICH and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from a grant of partial summary judgment on a complaint under 42 U.S.C. § 1983 alleging that two state prison inmates were transferred to out-of-state federal prisons in retaliation for the exercise of rights protected under the first amendment. Appellants Frank Grace and Albert Blake, along with three other individuals, were inmates at MCI Walpole and members of the Association for the Reduction of Violence (ARV) in December, 1978, when they filed the original complaint in this case in the United States District Court for the District of Massachusetts. The original complaint sought monetary, injunctive and declaratory relief against defendants, officials of the Massachusetts Department of Correction, in connection with an extended lockup of the maximum security block at Walpole in November and December of 1978.

On February 16, 1980, Grace was transferred from Walpole and eventually reassigned to the federal prison in Terre Haute, Indiana. On September 12, 1980, Blake was likewise transferred from Walpole and eventually reassigned to the federal prison in Leavenworth, Kansas. An amended complaint was filed on December 3, 1980, naming additional Department of Correction officials as defendants and alleging that the transfers of Grace and Blake were made in retaliation for the exercise of first amendment rights. The amended complaint sought a preliminary injunction to compel the return of Grace and Blake to Walpole. From February 10 to 13, the district court held hearings on the preliminary injunction motion, in the course of which the plaintiffs called Michael Fair, Deputy Commissioner of the Department of Correction since July, 1980, as a witness. Fair testified that Grace and Blake had been transferred on the basis of confidential reports and recommendations from subordinate prison staff and officials, for reasons other than retaliation. The court found on February 17, 1981, that the plaintiffs had failed to make the showing required for a preliminary injunction, and stated:

> The evidence which was received at this hearing—and particularly the testimony of Michael V. Fair, which I accept—presents a picture of action taken by the authorities in this case that has nothing to do with retaliation. It involves the receipt of information at a time of great tension at Walpole, information which might require, not simply justify, a transfer of these particular individuals. The status of these two men as leaders of segments of the population at Walpole, and the information received by the authorities as to their alleged activities at a time of peril (the involvement of one in the distribution of drugs, the involvement of the other in acts of violence, and the involvement of both in an act of disobedience) militate against a motive of retaliation. They point in the direction of a necessary conclusion (regardless of the truth or falsity of the information, so long as it was accepted as true) that the transfers were essential in carrying out the duties of the Corrections Department officials, to preserve the safety of inmates and other persons inside M.C.I. Walpole, and to maintain security which was then threatened.

On March 11, 1981, plaintiffs filed a request for the production of documents, including broad categories of prison files relating to the status of Grace and Blake and their activities while at Walpole, the reasons for their transfers, and the general atmosphere and conditions at Walpole at the time of the transfers. Plaintiffs' discovery motion was initially granted on May 18, 1981; but the court subsequently grant-

ed defendants' motion for reconsideration, and conducted an examination *in camera* of certain prison files alleged to be privileged and thus not subject to discovery. In a Memorandum and Order dated February 19, 1982, the court divided the documents in question into two categories, List A and List B. It found that the List A documents were "unrelated to the subject matter of this lawsuit and need not be turned over to the plaintiffs." As to the List B documents, it found as follows:

[They] do mention either Blake or Grace and some of them arguably relate to the subject matters of this lawsuit. I find, however, that the need for secrecy to protect confidential sources of information and to preserve the integrity and confidentiality of prison investigative processes and of the records and personal files of the institution, *See Kerr v. U.S.D.C.*, 426 U.S. 394, 405 [96 S.Ct. 2119, 2125, 48 L.Ed.2d 725] (1975), overwhelms whatever relevance these materials may have to the subject matters of this action. I rule, therefore, that the [List B] documents must not be turned over to the plaintiffs[.]

On January 10, 1983, the court heard argument on defendants' motion for summary judgment. In its Memorandum and Order of March 8, 1983, it granted the motion with respect to the retaliatory transfer claim based on a review of the "entire record":

In addition to the pleadings, affidavits, answers to interrogatories, and the numerous depositions on file, I have reviewed the transcripts of the three-day preliminary injunction hearing. *Finally, I have again reviewed the documents which were the subject of the memorandum and order of February 19, 1982, denying plaintiffs' motion for production.* (Emphasis added.)

The court adopted the excerpt already quoted from its February 17, 1981 statement of reasons for denying the preliminary injunction—omitting the express references to Michael Fair's testimony and the contents of the prison files subsequently determined to be privileged in the February 19, 1982 ruling—and concluded:

Despite the extensive discovery engaged in since then, the plaintiffs have been unable to produce a scintilla of evidence, or even a promise of any evidence, that would form the basis of a permissive inference that their transfers were retaliatory and would not have taken place "but for" the exercise of their constitutionally protected rights.

The present appeal is taken from the district court's March 8, 1983, 558 F.Supp. 661, grant of partial summary judgment, and is accordingly limited to the retaliatory transfer claim. Appellants assert that the district court erred in two respects: they contend, first, that the prison files viewed *in camera* are not privileged and should have been produced, or that if they were privileged the court should not have considered them in ruling on the summary judgment motion; and second, that the court was wrong in holding on the merits that there was no genuine issue of fact as to retaliation.

At the outset, we assume, without deciding, that the district court did not abuse its discretion in ruling that the documents it viewed *in camera* were privileged. The court apparently relied on three types of privilege more or less securely established in federal case law and thus applicable under Federal Rule of Evidence 501:[1] (a) the so-called informer's privilege, which protects the identity of people who inform law enforcement officers of violations of law, *see Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); (b) a privilege for "documents that

---

1. Fed.R.Evid. 501 provides in pertinent part: Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

would tend to reveal law enforcement investigative techniques or sources," *Black v. Sheraton Corp. of America,* 564 F.2d 531, 545 (D.C.Cir.1977); *see also Jabara v. Kelley,* 75 F.R.D. 475, 481 (E.D.Mich.1977); *Kinoy v. Mitchell,* 67 F.R.D. 1, 11 (S.D.N.Y.1975); Note, *Discovery of Government Documents and the Official Information Privilege,* 76 Colum.L.Rev. 142, 157–62 (1976); *cf.* Proposed Fed.R.Evid. 509(a)(2)(B), 56 F.R.D. 183, 251 (1972) (not adopted); and (c) a privilege for intragovernmental memoranda containing opinions or recommendations of policy-making rather than purely factual import, *see Jabara,* 75 F.R.D. at 481; *Kinoy,* 67 F.R.D. at 11; *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 944–47, 141 Ct.Cl. 38 (1958); Note, 76 Colum.L.Rev. at 162–65 (noting that "[p]rison files represent a specific branch of the interagency memoranda category and have often been accorded special protection by the courts"); *cf.* Proposed Fed.R.Evid. 509(a)(2)(A).

■ All three privileges in issue here are essentially similar in their underlying rationales and principles of application. They are qualified rather than absolute, and a trial court is thus obliged to balance conflicting interests on a case-by-case basis in ruling on particular claims of privilege. *See Roviaro,* 353 U.S. at 62, 77 S.Ct. at 628; *Jabara,* 75 F.R.D. at 481; *Kinoy,* 67 F.R.D. at 11. When particular documents have been determined to be covered by a qualified privilege, a party seeking discovery of those documents must make a threshold showing of need, amounting to more than "mere speculation," *Socialist Workers Party v. Attorney General,* 565 F.2d 19, 23 (2d Cir.1977), *cert. denied,* 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978); *United States v. Alvarez,* 472 F.2d 111, 113 (9th Cir.1973), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973). Once this burden is met, an *in camera* review of the documents in question (like that conducted by the district court in the present case) "is a relatively costless and eminently worthwhile method to insure that the balance between [one party's] claims of irrelevance and privilege

and [the other's] asserted need for the documents is correctly struck." *Kerr v. United States District Court,* 426 U.S. 394, 405, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1977).

■ The interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources. *See United States v. Estrella,* 567 F.2d 1151, 1153 (1st Cir.1977); *United States v. Leggett & Platt, Inc.,* 542 F.2d 655, 659 (6th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977). Indeed, a showing that the information "is relevant and helpful to the defense of [a criminal defendant] or is essential to a fair determination of a cause," may be sufficient to overcome an assertion of privilege. *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 627–28. The scope of a privilege is limited by its underlying purpose, and should not be applied where that purpose would not be served. *See id.* at 60, 77 S.Ct. at 627. Thus, where it is possible for a court to make the innocuous portions of documents containing privileged information available, by excising the privileged sections, *see Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Co.,* 49 F.R.D. 54, 57–58 (S.D.N.Y.1970), by editing or summarizing the documents, or by permitting discovery subject to a protective order, *see Kinoy,* 67 F.R.D. at 11, this may be an adequate accommodation of the moving party's interest in disclosure.

■ On the other hand, the interest of the party asserting a privilege tends to be strongest when the information in question falls squarely within the definition of privilege, and its disclosure would undermine the public interest in free, candid and uninhibited exchange of information or jeopardize the physical security of an individual or governmental institution. In the specific context of prison files, the Supreme Court has noted the "potential seriousness" of the government's interest, based on

the notion that turning over the requested documents would result in substantial injury to the State's prison-parole system

by unnecessarily chilling the free and uninhibited exchange of ideas between staff members within the system, by causing the unwarranted disclosure and consequent drying up of confidential sources, and in general by unjustifiably compromising the confidentiality of the system's records and personnel files.

*Kerr,* 426 U.S. at 405, 96 S.Ct. at 2125 (footnotes omitted). *See also Williams v. Missouri Bd. of Probation & Parole,* 661 F.2d 697, 700 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982) ("we recognize the state's strong and legitimate interest in preserving the confidentiality of sources of information necessary for parole release decisions and in maintaining security and discipline within its institutions") (footnote omitted).

■ Assuming, as we do, that the district court in the present case acted within its discretion, *see Estrella,* 567 F.2d at 1153, in ruling that the prison files in List A and List B were not discoverable under Federal Rule of Civil Procedure 26(b)(1) due to irrelevance and privilege respectively, we are faced with the issue of the evidentiary basis for the court's summary judgment ruling. In ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56, a trial court may consider a wide variety of materials:

> [I]n addition to pleadings, depositions, admissions on file, answers of a party to interrogatories, and affidavits, which Rule 56(c) specifically enumerates, a court may consider oral testimony and any other or additional materials *that would be admissible in evidence or otherwise usable at trial.*

Material that does not come within the above broad category should not be considered.

6 Moore's Federal Practice, ¶ 56.11[1.–8] at 56–205 to 207 (1983) (footnotes omitted, emphasis added). Here, however, the district court apparently relied on documents which it had previously determined to be privileged and as to which it had denied plaintiffs' discovery motion. Although the circumstances are less egregious than in *Bane v. Spencer,* 393 F.2d 108 (1st Cir. 1968), *cert. denied,* 400 U.S. 866, 91 S.Ct. 108, 27 L.Ed.2d 105 (1970), where the defendant obtained summary judgment based on an affidavit incorporating impounded and nonproducible medical reports, *id.* at 109, we think that our holding in *Bane* clearly requires that the grant of summary judgment here be vacated and remanded. *See id.* at 110; *cf. Jabara,* 75 F.R.D. at 489 (making "abundantly clear" that *in camera* inspection conducted solely to determine discoverability and not "for the purpose of making any *ex parte* determination on the merits"). As the court in *Kinoy* noted:

> Our system of justice does not encompass *ex parte* determinations on the merits of cases in civil litigation. [If] the documents are privileged, [then] the litigation must continue as best it can without them . . . .

67 F.R.D. at 15. *See also Application of Eisenberg,* 654 F.2d 1107, 1112 (5th Cir. 1981).[2]

■ We conclude that a remand is necessary. If the defendants renew their motion for summary judgment, the district court will have to rule on the motion without relying on any privileged materials. Therefore, in light of the foregoing discussion, the district court should begin by making a fresh determination of privilege based on an *in camera* examination of the docu-

---

**2.** Although we do not reach the merits of the summary judgment ruling, we note that the burden of showing the absence of genuine issues of material fact lies with the party moving for summary judgment, regardless of how the burden of proof would be allocated at trial. *See* 6 Moore's Federal Practice, ¶ 56.15[3] at 56–480 to 481; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–60, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Bromley-Heath Modernization Comm. v.*

*Boston Housing Authority,* 459 F.2d 1067, 1071–72 (1st Cir.1972). Appellees, seizing on dicta in *McDonald v. Hall,* 610 F.2d 16, 18–19 (1st Cir. 1979), argue that the burden on the moving party is diminished in the prison context generally. Fed.R.Civ.P. 56(c), however, does not permit varying procedural requirements according to the kind of case being heard, and we cannot read *McDonald* as doing so.

ments as to which privilege is claimed. It is possible, of course, that a party claiming privilege may also seek to use privileged information to present its case or a party's claim of privilege may conflict with another party's claim of access to vital material. In such a situation the district court, having taken the competing interests into account in its initial determination of privilege, still has available at least two methods of avoiding the impasse which might otherwise arise. It may edit or sanitize the documents in question so that they can be disclosed without undue harm to the underlying interests of the party claiming privilege or, if this is not feasible, the court may develop its own summary of the privileged material and release the summary to the parties for use in lieu of the original. The district court's actions in editing, sanitizing, or summarizing material would, of course, be reviewable along with its ruling on privilege. Nothing in the record before us suggests that such an accommodation cannot be reached here.

*Vacated and remanded.*