**Fred D. GOMEZ**

v.

**CITY OF NASHUA, NEW HAMPSHIRE, et al.**

**Civ. No. 87–306–D.**

United States District Court,
D. New Hampshire.

June 21, 1989.

McLane, Graf, Raulerson & Middleton by Jack B. Middleton, R. David DePuy and Charles W. Grau, Manchester, N.H., for Fred Gomez.

Donald M. Redden, Derry, N.H., for Paul L. Gopil.

James S. Yakovakis, P.A. by James G. Walker, Manchester, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

In this civil rights action, 42 U.S.C. § 1983, plaintiff alleges that he was beaten by three police officers from the City of Nashua Police Department. The matter is currently before the Court on the Motion to Quash Subpoena of Assistant Attorney General Michael Ramsdell and plaintiff's objection thereto. The following facts are relevant.

By letter dated August 7, 1987, plaintiff requested that the Attorney General's Office conduct an investigation into allegations that he was assaulted by members of the Nashua Police Department. Part of the investigation was conducted by Assistant Attorney General Michael Ramsdell. The Attorney General concluded, in a letter to Police Chief William Quigley dated November 12, 1987, that "the evidence is insufficient to establish any unlawful conduct or overreaching on the part of the police officers in [the] case."

By letter dated November 25, 1987, plaintiff's counsel requested that the Office of the Attorney General provide him with a copy of the office's investigative file pursuant to New Hampshire Revised Statutes Annotated ("RSA") 91–A, the New Hampshire "Right to Know" law. The Attorney General's Office provided the file for inspection, with redacted versions of memoranda dated October 12 and November 3, 1987, but did not provide the handwritten notes of any prosecutor, which the office considered to be confidential and not subject to disclosure. The office specifically refused to disclose the statement of Dr. Barry Stern, the physician who treated Mr. Gomez after the alleged assault.

Plaintiff asserts that Dr. Stern's statement led the Office of the Attorney General to conclude that the Nashua Police Department acted appropriately in its treatment of Mr. Gomez. "Because of the important nature of Dr. Stern's statement," Plaintiff's Memorandum at 2, plaintiff's attorney issued a subpoena to Assistant Attorney General Ramsdell on May 19, 1989, seeking his appearance for a deposition on June 2, 1989. The subpoena asked him to bring "all notes, correspondence, memoranda, observations, or other records of any kind in any way related to an incident involving Fred D. Gomez and the Nashua Police Department," and concerning "conversations, communications, or correspondence to or from Barry L. Stern M.D." related to the Gomez incident. The deposition has been postponed pending ruling by the Court on the instant motion to quash the subpoena.

The scope of discovery in this action is governed by Rule 26(b), Fed.R.Civ.P., which provides that the parties "may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence" (emphasis added).

The State argues initially that the doctrine of absolute immunity set forth in the case of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), serves to immunize prosecutors from the discovery process. Although the doctrine immunizes a prosecutor from civil liability, the immunity does not extend to preclude his participation in the discovery process in litigation to which he is not a party. *See Sullivan v. Stefanik*, 605 F.Supp. 258, 260 (N.D.Ill.1985). However, for the following reasons, the Court finds that Mr. Ramsdell is otherwise privileged from the discovery process and that his deposition is not appropriate in this case.

Relevant to this action is the "governmental" or "deliberative process" privilege. *See Rodgers v. Hyatt,* 91 F.R.D. 399, 404 (D.Colo.1980), *aff'd,* 697 F.2d 899 (10th Cir. 1983); *see also Kinoy v. Mitchell,* 67 F.R.D. 1, 10–11 (S.D.N.Y.1975). Federal courts have long recognized a policy against exploratory inquiries into the mental processes of governmental decision makers. *See N.O. v. Callahan,* 110 F.R.D. 637, 642 (D.Mass.1986) (citations omitted); *see also Community Fed. Savings & Loan Assoc. v. Federal Home Loan Bank,* 96 F.R.D. 619, 621 (D.D.C.1983) (citing *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)). The Supreme Court has summarized the scope and rationale of the privilege as follows:

> The cases uniformly rest the privilege on the policy of protecting the "decision making processes of government agencies" and focus on documents "reflecting advisory opinions, recommendations, and deliberations comprising of a process by which governmental decision and policies are formulated." ...
>
> Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions.

*NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 150–51, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (citations omitted).

Also underlying the policy is the rationale that "the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases.... [A] failure to place reasonable limits upon private litigants' access to responsible governmental officials as sources of routine pretrial discovery would result in a severe disruption of the government's primary function." *Community Fed. Savings & Loan Assoc., supra,* 96 F.R.D. at 621 (citing *Capitol Vending Co. v. Baker,* 36 F.R.D. 45 (D.D.C.1964)).

■ Also relevant to this action is a privilege that applies to "documents that would tend to reveal law enforcement investigative techniques or sources." *Association for Reduction of Violence v. Hall,* 734 F.2d 63, 65–66 (1st Cir.1984) (quoting *Black v. Sheraton Corp. of America,* 564 F.2d 531, 545 (D.C.Cir.1977)).[1]

The applicable privileges are qualified, not absolute. *Id.* at 66. Courts in reviewing a claim of privilege are obliged to balance conflicting interests on a case-by-case basis. *Hall, supra,* 734 F.2d at 66; *see also Alex v. Jasper Wyman & Son,* 115 F.R.D. 156 (D.Me.1986). "When particular documents have been determined to be covered by a qualified privilege, a party seeking discovery of those documents must make a threshold showing of need, amounting to more than 'mere speculation.'" *Hall, supra,* 734 F.2d at 66. Once this burden is met, the First Circuit considers an *in camera* review of the documents to be the preferred procedure to balance the interests of the parties. *Springer v. Seaman,* 117 F.R.D. 487, 489 (D.Me.1987). *In camera* review "'is a relatively costless and eminently worthwhile method to insure

---

**1.** The State also asserts the work product privilege under Rule 26(b)(3), Fed.R.Civ.P. The literal language of the rule renders the privilege inapplicable in the instant case because the rule applies only to documents which are prepared in anticipation of trial "by or for another party or by or for that other party's representative...." *Id.; see also FTC v. Grolier, Inc.,* 462 U.S. 19, 25–26, 103 S.Ct. 2209, 2213–14, 76 L.Ed.2d 387 (1983). Because the State of New Hampshire and the Attorney General's Office are not parties to this litigation, Rule 26(b)(3) does not apply to this action.

Some courts have been willing to extend the work product privilege outside the literal bounds of the rule. However, the extent to which courts have done so varies greatly depending upon the nature of the case presented.

*Compare, e.g., Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 153 (D.Del.1977) (allowing discovery of documents prepared for one case in a second case where the two cases are closely related in parties or subject matter) *with Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 484 n. 15 (4th Cir.1973) (rejecting requirement that cases be closely related); *see also* 8 A. Wright & C. Miller, *Federal Practice and Procedure* § 2024, at 202 (1970). Here, because the government has not set forth specific reasons why the privilege should be extended beyond the literal language of the rule, and because the other privileges asserted by the government require the Court to balance essentially the same factors as would be considered under the work product privilege, the Court declines to consider the issue.

that the balances between [one party's] claims of irrelevance and privilege and [the other's] asserted need for the documents is correctly struck.'" *Hall, supra,* 734 F.2d at 66 (quoting *Kerr v. United States District Court,* 426 U.S. 394, 405, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976)).

The interest of the party seeking disclosure is strongest when the information sought is highly relevant, helpful, and unavailable from other sources. *Id.* The interest of the party asserting a privilege is strongest when the information in question falls squarely within the definition of privilege and its disclosure would "undermine the public interest in free, candid, and uninhibited exchange of information or jeopardize the physical security of an individual or governmental institution." *Id.*

The scope of the privilege is limited by its underlying purpose and should not be applied where that purpose would not be served. Purely factual information is not generally covered by the privilege. *N.O., supra,* 110 F.R.D. at 643. However, factual information may also be privileged if it is inextricably intertwined with the process by which policy is made or if the manner of selecting or presenting the facts would reveal the deliberative process. *See Dowd v. Calabrese,* 101 F.R.D. 427, 430–31 (D.D.C. 1984). If the court can make the innocuous portions of documents containing privileged information available by excising the privileged sections, or by other means, this may adequately accommodate the moving party's interest in disclosure. *Hall, supra,* 734 F.2d at 66.

In light of the above legal standards, the Court now considers plaintiff's discovery requests.

*Deposition of Michael Ramsdell*

The Court first addresses plaintiff's request to depose Michael Ramsdell. Plaintiff is interested in discovering what the Attorney General's investigation revealed and the basis of the Attorney General's decision not to prosecute the case.

■ The latter inquiry is clearly protected from the discovery process by the privileges set forth above. The decision whether to prosecute is the product of a deliberative process which should be afforded a high degree of protection from public inquiry. *See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324–37 (D.D.C.1966) (discussing the importance of protecting the communicative process within the Department of Justice), *aff'd sub nom., V.E.B. Carl Zeiss, Jena v. Clark,* 384 F.2d 979 (D.C.Cir.), *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

In a similar context, one court has recognized that the mental processes of prosecuting attorneys should be afforded protection from discovery. In *Sullivan, supra,* 605 F.Supp. 258, plaintiff brought a section 1983 action alleging false imprisonment and malicious prosecution. Plaintiff sought to depose the Assistant States Attorney who was present at his preliminary hearing in an effort to reconstruct the state court record, which was inadequate for the court to make a determination of the issues presented. The court allowed the States Attorney to be deposed regarding what happened at the preliminary hearing, but the court stated that "it would be improper to ask him abut his own mental processes or opinions." *Id.* at 260.

Plaintiff has failed to demonstrate a similarly compelling need to depose Mr. Ramsdell. The Attorney General's decision not to prosecute is not relevant to this action. Inquiry of Mr. Ramsdell regarding the decisions made in investigating the case and in determining whether to prosecute would improperly divulge mental processes protected by the privilege.

■ Plaintiff is also interested in discovering the information uncovered by the Attorney General's investigation. Although the information gathered by the Attorney General's Office is relevant to plaintiff's action, the information may be obtained by less onerous means than taking the deposition of Mr. Ramsdell. Documentary evidence in the investigative file would reveal the information uncovered. Plaintiff may also depose any witnesses to the incident to discover their recollection of the events in question. Plaintiff states he

is most interested in Dr. Stern's statement to the Attorney General's Office because it formed the basis of the decision not to prosecute. But again, the Attorney General's decision whether to prosecute is not relevant to the instant action; it is Dr. Stern's recollection of events which is important. Plaintiff may discover this information by deposing Dr. Stern. Courts generally refuse to compel the deposition of a government witness if the plaintiff may obtain discovery by an alternative and less burdensome method to the government. *See, e.g., Alex, supra*, 115 F.R.D. at 158–59; *see also Community Fed. Savings & Loan, supra*, 96 F.R.D. at 621–22.

The Attorney General's Office performs numerous investigations into purported criminal conduct as a part of its public function. Subjecting employees of that office to deposition absent the showing of a compelling need would violate public policy concerns that the time and resources of that office be conserved for the public business. Plaintiff has not established such a compelling need in this case. The motion to quash the deposition of Assistant Attorney General Michael Ramsdell is accordingly herewith granted.

*Documentary Evidence*

■ Plaintiff seeks to discover any notes made in the course of investigating the Gomez incident. The government asserts that it has provided redacted copies of two memoranda but has not provided handwritten notes made during or after interviews and while reviewing transcripts, which it considers to be privileged.[2]

In *Zinker v. Doty*, 637 F.Supp. 138 (D.Conn.1986), the plaintiff sought to discover a hearing officer's notes from an administrative proceeding to determine what took place at the hearing. The court held that the notes were "deliberative" rather than "factual". *Id.* at 140. "Selective note-taking is the product of deliberative process. The hearing officer's notes

may reflect his judgment about what evidence at the hearing was noteworthy, or they may be only a record of potentially relevant testimony or evidence." *Id.* at 140–41. Accordingly, the court found the notes were protected by the deliberative process privilege.

Similarly, the court finds that any handwritten notes taken in the course of witness interviews and while reviewing transcripts are part of the deliberative process which could reflect judgments regarding the Attorney General's decision not to prosecute the case. Accordingly, the documents requested are subject to the privilege. However, because the information sought may contain factual information relevant to the instant action which may be capable of being severed from the privileged information, the Court finds that *in camera* inspection of the file is warranted. The State concedes that *in camera* inspection is an appropriate means for the court to consider the competing interests of the parties.

■ The State contends that the omitted information from the memoranda and the relevant handwritten notes would tend to reveal the identity of a confidential informant. If so, the information may be protected from discovery by the "informant's privilege", which serves to protect the flow of information to the government. *See Dowd, supra*, 101 F.R.D. at 436. But, again, the privilege is not absolute, and the Court must balance the plaintiff's need for the information with the needs of the government.

Accordingly, the Court herewith orders the government to submit to the Court within ten days of the date of this Order the investigative file from the Gomez incident for *in camera* inspection. The government is herewith ordered to identify the documents which were provided to the plaintiff and the documents which were

---

**2.** Plaintiff argues he is entitled to disclosure of the documents under RSA 91–A. However, this is not an action brought under that statute, but a discovery dispute governed by the Federal Rules of Civil Procedure. Accordingly, the Court declines to consider plaintiff's argument.

*See Rodgers, supra*, 91 F.R.D. 399 (plaintiffs not permitted in civil discovery context to force production of documents which would have to be disclosed in Freedom of Information Act suit).

withheld, with a statement of the privilege asserted and the reasons therefor.

SO ORDERED.