Bernard **HUEBNER** et al., Plaintiffs,

v.

Dr. Frank **OCHBERG**, Director of the Department of Mental Health et al., Defendants.

Civ. A. No. 80–71667.

United States District Court, E. D. Michigan, S. D.

July 25, 1980.

---

George B. Washington, Detroit, Mich., for plaintiffs.

James M. Batzer, Asst. Atty. Gen., Mental Health Division, Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

### PHILIP PRATT, District Judge.

In this suit plaintiffs seek injunctive relief against the Clinton Valley Center, a mental hospital, claiming that conditions at Clinton Valley violate provisions of both the federal and state constitutions, the state Mental Health Code, and state administrative regulations. Specifically, plaintiffs complain of staffing shortages, overcrowding, fire and safety hazards, lack of staff training, and indiscriminate use of medication and drugs. The plaintiffs consist of several Clinton Valley patients, the Association of Patients, Relatives and Friends of Clinton Valley Center (the Association), and AFSCME Local 49, a union of employees at Clinton Valley (the Union).

Two motions are pending: defendants' Motion to Dismiss Certain Plaintiffs, and plaintiffs' Motion to Certify a Class Action.

### A. DEFENDANTS' MOTION TO DISMISS CERTAIN PLAINTIFFS

#### 1. The General Requirements of Standing.

■ Defendants move under Rule 12(b)(1) to dismiss the Union and the Association for lack of standing. The first aspect of the standing doctrine requires that litigants allege an "injury in fact",

> "that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction . . ."
> *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1975).

When the standing of a plaintiff association is in question,

> "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort

that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1974).

■ Although the Amended Complaint alleges numerous injuries to Clinton Valley patients, none of the patients is a member of the relatives and friends Association; and the Amended Complaint nowhere alleges any injury to the Association or its members. "Absent the necessary allegations of demonstrable, particularized injury" satisfying Article III's case or controversy requirement, the Association must be dismissed without prejudice for lack of standing. *Id.*, at 508, 95 S.Ct., at 2210.

■ In contrast, the Amended Complaint does allege injury to the members of the Union sufficient to give rise to an adversarial stake in the outcome of this case. (For instance, it is alleged that staffing shortages have encouraged over sixty attacks on employees. Amended Complaint ¶ 60, ¶ 76.) Thus the Union passes the initial standing hurdle, the injury-in-fact requirement of Article III.

■ The other aspect of the standing inquiry concerns

> "whether, as a prudential matter, the plaintiff[s]-respondents are proper proponents of the particular legal rights on which they base their suit."
> *Singleton v. Wulff, supra*, 428 U.S. at 112, 96 S.Ct., at 2873.

Typically this second test of standing means that the plaintiff may sue only if the

> "interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."
> *Data Processing Service v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1969).

In other words, the plaintiff can only sue under laws which are intended to protect or benefit him;

> "[o]rdinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party."

*Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1952). Although a plaintiff is harmed by state action (and thus the constitutional standing requirement is met), the Supreme Court "has developed a complementary rule of self-restraint for its own governance . . which ordinarily precludes a person from challenging the constitutionality of state action by invoking the rights of others." *Id.*

However this second principle of standing is not an absolute jurisdictional bar; there are numerous exceptions. *See, e. g., Singleton v. Wulff, supra*; 88 *Harv.L.Rev.* 423 Standing to Assert Constitutional *Jus Tertii* (1974). The second rule of standing is simply a matter of judicial "self-governance", designed to avoid unnecessary constitutional decisions and to adjudicate rights only when asserted by their most effective advocates. *Singleton v. Wulff, supra*, 428 U.S. at 124, 113–4, 96 S.Ct. at 2879, 2873–74. It may at times be prudent to allow a plaintiff to assert the rights of others. *E. g., Singleton v. Wulff, id.; Hunt v. Washington Apple Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Carey v. Population Services,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

In the case at bar, does the Union fulfill the second criterion for standing? Plaintiffs argue that it does, both because the Union asserts its own rights, and because the Union is an appropriate proponent of the constitutional rights of the patients. The Court will consider the latter theory first.

### 2. The Union's Standing to Assert the Rights of Others.

The exceptions to the prohibition against *jus tertii* standing have nearly engulfed the rule. 88 *Harv.L.Rev.* 423 (1974). In practice the Supreme Court has been receptive to *jus tertii* standing, although in the course of approving such standing in a given case the Court generally explains itself by means of relatively narrow or restrictive theories. *Id.* at 427.

In *Singleton v. Wulff, supra,* the Supreme Court mentioned some factors which could justify allowing a litigant to assert the rights of others. "The first is the relationship of the litigant to the person whose right he seeks to assert." *Singleton v. Wulff, supra,* 428 U.S. at 114, 96 S.Ct. at 2874. If the other person's enjoyment of his rights is "inextricably bound up with" the litigant's activity, then *jus tertii* standing may be appropriate. Stated differently, standing exists where the alleged injury to the litigant necessarily causes the rights of third parties to be "diluted or adversely affected". *Id.* at 115, 96 S.Ct. at 2874; 88 *Harv.L.Rev.* 423.[1] Applying this formula to the case at bar, it is clear that injury to the Union does necessarily affect the interests and well being of patients as well. Staffing cutbacks and inadequate training injure patients precisely because such practices adversely affect Union members.

The Court in *Singleton* mentioned a second factor: "the ability of the third party to assert his own right". *Singleton v. Wulff,* at 115–16, 96 S.Ct. at 2875.

"If there is some genuine obstacle to such assertion . . . the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent."
*Id.* at 116, 96 S.Ct. at 2875.

The Court's discussion of this factor suggests that *jus tertii* standing will be permitted only where the best plaintiff, the holder of the rights asserted, cannot easily litigate on his own behalf. But even this may not be a necessary prerequisite, for in *Craig v. Boren, supra,* the Court allowed the beer

---

1. It is not mandatory that there be a fiduciary relationship between the litigant and the third party. And although several *jus tertii* cases involved doctors asserting the rights of their patients, *Singleton v. Wulff* emphasized that this sort of relationship was not the test. *Id.* at 115, 96 S.Ct. at 2874. ·*See also, Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). More recently the Court permitted a beer vendor to assert the rights of persons under age twenty-one. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

distributor to assert the equal protection rights of eighteen to twenty-one year old males even though there was nothing preventing these third parties from suing on their own. *See also,* 88 *Harv.L.Rev.* 423 (suggesting that the first factor should be the keystone of analysis).

Applying this second factor to the case at bar serves to highlight the unique context of the standing issue here. The Union does not seek to assert the rights of *absent* third parties; the patients are themselves litigants in this lawsuit.[2] Thus, it may be that there is no reason to settle for a surrogate champion of their rights. On the other hand, in a sense there may still be obstacles preventing the patients from being the most effective proponents of their rights. The defendants themselves argue that the patients are mentally incompetent to protect or advocate their rights. Defendants' Response to Motion to Certify a Class Action. Additionally, the presence of the patients is assurance that their rights are truly at stake and important to them. It also means that the Court cannot avoid the constitutional issues the Union seeks to assert. So the prudential reasons for employing the standing doctrine to bar a plaintiff's claim—avoidance of decisions until necessary and until presented in the strongest adversary framework—are not operative here.

### 3. *The Union's Assertion of its Own Rights.*

Even if this is not a proper case to allow *jus tertii* standing, plaintiffs argue, the Union must be retained as a plaintiff because this suit involves, in part, laws which arguably *are* intended to protect or benefit the members of the Union. The defendants conceded this much at oral argument; defendants acknowledged that the Union members are within the zone of those intended to be protected by the state building health and safety codes. The defendants argue, however, that even though this gives the Union standing to assert these rights, the Court has no federal subject matter jurisdiction to hear the purely state claims of pendent parties.

■ "Pendent jurisdiction", in the general sense, gives a federal court the power to hear a state claim where the Court has subject matter jurisdiction over the case by virtue of a federal claim and where the state and federal claims derive from a common nucleus of fact. *Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). (Defendants do not contest the Court's pendent subject matter jurisdiction.) The problem of "pendent parties" is a variation on this theme, where the pendent state claim involves a third party with respect to whom there is no independent basis of federal jurisdiction. Although the question was controversial, the majority of the circuits approved of pendent party jurisdiction in some circumstances. 7 Wright & Miller, *Federal Practice and Procedure,* § 1659 (supplement), § 3567 at 459 and n. 59. (The Sixth Circuit has not ad-

---

2. Neither the plaintiffs nor the defendants have called the Court's attention to any cases where the problem of *jus tertii* standing occurs in such a context (where the third parties are also plaintiffs). The Supreme Court's decision in *Carey v. Population Services, supra,* is somewhat instructive in this regard. *Carey* was a suit challenging, on First and Fourteenth Amendment grounds, a statute which forbade anyone to distribute contraceptives to minors, permitted only pharmacists to distribute contraceptives to adults, and prohibited all advertisements of contraceptives. The plaintiffs included an organization disseminating birth control information and services, a director of a venereal disease prevention program, three physicians, and an adult citizen who alleged that the statute inhibited his access to contra-

ceptive devices and information. *Id.* at 682, n. 2, 97 S.Ct. at 2014. The District Court held that the organization and the individual citizen had standing, so it was unnecessary to consider the standing of the other plaintiffs. 398 F.Supp. 321 at 327-330 (1975). The Supreme Court concluded that the birth control organization (PPA) had standing and stated "therefore [we] have no occasion to decide the standing of the other [plaintiffs]". *Carey* at 682, 97 S.Ct. at 2014. Thus the Court found that the organization had standing to assert the rights of others, even though at least some of those others were present as plaintiffs in the lawsuit (e. g., the individual adult citizen). And as long as one plaintiff was found to have standing, the Court declined to question the standing of other plaintiffs.

dressed the problem.) This trend may have been halted by the Supreme Court in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975).

*Aldinger* involved a federal action against individual county officials and a pendent state claim against the county itself. The Court held that there was no jurisdiction over the state claim against the county because the statute giving federal jurisdiction in the case (42 U.S.C. § 1983) precluded counties from being sued. (*Aldinger* was decided prior to *Monell v. N. Y. City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Prior to *Monell* the Court held that a county was not a "person" suable under § 1983.) The Court declared that even if the *Gibbs* test of a "common nucleus of operative fact" was met, pendent parties could not come within a federal court's jurisdiction where the jurisdictional statute indicated Congress' specific disapproval of taking jurisdiction over that party. *Aldinger* at 16–17, 96 S.Ct. at 2421–22.

Although it is not clear how expansively *Aldinger* will be read,[3] it is clear that the decision does not foreclose all pendent party jurisdiction. The Court stated that

> "We think it quite unnecessary to formulate any general, all-encompassing jurisdictional rule"

and

> "[o]ther statutory grants and other alignments of parties and claims might call for a different result."
>
> *Id.* at 13 and 18, 96 S.Ct. at 2419 and 2422.

The jurisdictional statutes in the case at bar are the same as those in *Aldinger*, yet there is nothing in those statutes, their legislative history, or their judicial interpretations which indicates a Congressional intent to bar a Union or its members from being plaintiffs. *Cf. Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (union and union members may sue under § 1983 and § 1985).

The case at bar is also distinguishable from *Aldinger* in that there is no question here of haling a non-federal defendant into federal court; rather the defendant is already properly in federal court and properly called upon to answer the state claim of the federal plaintiff (as in *Gibbs*). The pendent party here is an additional plaintiff, willingly in federal court, seeking to litigate the same questions an admittedly proper federal plaintiff will litigate against the defendant, and seeking identical relief. "This would not be an 'unfair' use of federal power by the suing party . . ." (*Aldinger*, 427 U.S. at 14, 96 S.Ct. at 2420), and it may in fact avoid subjecting the defendants to multiple litigation (in state and federal forums).

 In sum, the Court concludes that it has jurisdiction to retain the Union as a plaintiff, either as an advocate of its own pendent claims or as an advocate of the rights of the patients. Viewed pragmatically, the defendants will have to litigate the same questions and face the same relief, whether the Union is in the suit or not. The Union's presence will promote judicial economy and convenience, and will help to present all the issues in their most sharply focused form.[4] Defendants' Motion is denied as to the Union.

## B. PLAINTIFFS' MOTION TO CERTIFY A CLASS ACTION

The individual patients and the Association (of friends and relatives) move to be

---

**3.** The cases cited by defendants at oral argument rejected pendent parties in circumstances vastly different from those at bar. In the cited cases the plaintiff, in federal court by virtue of diversity jurisdiction, sought to bring in a new, non-diverse defendant. *Owen Equipment v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Saalfrank v. O'Daniel*, 533 F.2d 325 (6th Cir. 1976).

**4.** Implicit in the defendants' motion may be the concern that the real impetus behind the whole lawsuit is the Union's resolve to fight staff cutbacks at Clinton Valley, that the Union is riding into federal court on the backs of the patients. It may well be that the Union's motivation is entirely selfish, but this is no reason to dismiss them. In several cases the Supreme Court has allowed self-interested plaintiffs to assert the rights of third parties. *E. g., Craig v. Boren, supra* (commercial beer seller). In any event, the Court has other means to protect the patients, as will be discussed *infra*.

named certified representatives of present and future in-patients at Clinton Valley Center. The defendants concede that these plaintiffs meet the criteria of Rule 23, with one exception: defendants insist that these plaintiffs cannot represent adequately the proposed class. F.R.C.P. 23(a)(4).

As to the patients, defendants argue that they are mentally incompetent so they are unqualified to sue on their own behalf or to represent absent class members. Defendants request that a guardian ad litem be appointed. As to the Association, defendants argue that it lacks standing and cannot be a class representative because it is not a member of the proposed class.

Rule 17 governs the question of whether the patients are legally capable of suing in the first instance. The Rule says, in part:

"(b) Capacity to Sue or Be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. . . .

"(c) Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." F.R.C.P. 17.

■ This means that the patients' legal competency must be determined under state law, *Brimhall v. Simmons*, 338 F.2d 702 (6th Cir. 1964); then, if the patients are found to be incompetent under state law and if they do not have a duly appointed representative, the Court must appoint a *guardian ad litem* or next friend or make some other appropriate protective order.

■ Under Michigan law, the Court cannot assume that the patients are legally incompetent merely because they are patients in a mental hospital.

"(1) No determination that a person requires treatment, no order of court authorizing hospitalization or alternative treatment, nor any form of admission to a hospital shall give rise to a presumption of, constitute a finding of, or operate as an adjudication of legal incompetence.

(2) No order of commitment under any previous statute of this state shall, in the absence of a concomitant appointment of a guardian, constitute a finding of or operate as an adjudication of legal incompetence. M.C.L.A. § 330.1489.

Furthermore, Michigan law requires a full-blown adversary hearing to determine competency. M.C.L.A. §§ 330.1492, 700.443, 700.444. So the Court cannot find the patients incompetent merely on the basis of the medical reports defendants attached to their Answer to Plaintiffs' Motion. Yet the defendants at oral argument stated they did not wish to have evidentiary hearings concerning the patients' competency. The matter is further complicated by the fact that the plaintiffs do not oppose defendants' request for the appointment of a guardian ad litem, although the plaintiffs do not concede their incapacity to sue.

The Court cannot conclude now that the patients are legally incompetent to sue under state law or Rule 17. May the patients then also be class representatives? Mental patients have sometimes served as named plaintiffs in class actions challenging conditions of confinement. *E. g.*, *Davis v. Balson*, 461 F.Supp. 842 (E.D.Ohio 1978). Defendants themselves argue, in the course of their attempts to dismiss the Union and the Association, that the plaintiffs who can best appreciate the problems and interests of the patients are the patients themselves. And they are represented by dedicated counsel who is experienced in working with mentally ill and retarded litigants. *See* attorneys affidavit in plaintiffs' Motion to Certify.

■ Yet the Court is concerned about the ability of the patients to comprehend

the proceedings and to consult intelligently with their counsel.[5] True, this concern about the named patients' actual ability to litigate, based upon the medical reports, does not warrant dismissal or require the Court to take measures under Rule 17(c). Nevertheless it would seem that the patients must have more assistance if they are to be allowed to represent the claims of absent class members. *Dixon v. Attorney General of Pennsylvania*, 313 F.Supp. 653 (D.C.1970). Appointment of a guardian ad litem or next friend as under Rule 17(c) is thus appropriate in this class action, especially where the parties agree on this measure.

 The plaintiff Association also seeks to be certified as representative plaintiff for the class of patients. Of course normally only a member of the class can be a named class representative. Rule 23(a); 7 Wright and Miller, *Federal Practice and Procedure*, § 1761. In addition, the representative plaintiff must have standing. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). As discussed *supra*, the Association will be dismissed for lack of standing. Therefore it cannot be certified as a representative for the class under Rule 23.

However, the Association of friends and relatives may be a likely candidate to assist the patients in their class action. That is, the Association could serve as next friend. Although the parties have concurred in the suggestion that a guardian, or guardians, ad litem be appointed, they have not advised the Court of the names of anyone who might serve this function. It would appear that the Association or some of its officers might be appropriate in this regard. The Court would welcome affidavits containing more information about the Association, its members, and its relationship to the named patients. Upon the receipt of submissions identifying the Association or some other person or persons as effective representa-

tives of the patients the Court will certify the class.

In conclusion, defendants' Motion to Dismiss is granted as to the Association and denied as to the Union. Plaintiffs' Motion for Class Certification is held in abeyance.

IT IS SO ORDERED.

5. Also, as mentioned *supra*, the Court is concerned that the interests and claims of the patients receive full expression and not be dominated by the interests of the Union. It is not clear at this point that the interests are inimical but it must be constantly borne in mind that conflict may arise, and that if it does, the Court would be required to take measures commensurate with the circumstances whatever the costs in delay or expense.