v.

**James CALLAHAN, et al.**

**Civ. A. No. 85–0836–Mc.**

United States District Court,
D. Massachusetts.

June 19, 1986.

Scott P. Lewis, Laurie S. Gill, Palmer & Dodge, Boston, Mass., for plaintiffs.

Alexander G. Gray, Jr., Carl Valvo, Asst. Atty. General., Govt. Bureau, Boston, Mass., for defendants.

## DISCOVERY ORDER AND MEMORANDUM

PATTI B. SARIS, United States Magistrate.

This is a civil rights action brought by seven plaintiffs who are or were inpatients at mental health facilities operated by the Massachusetts Department of Mental Health (DMH). They claim they have special or chronic medical or nursing care needs that cannot adequately be treated by the DMH medical care system, and allege that defendants' "gross, systematic and continuing failure to provide them adequate medical care and facilities" violates the federal and state constitutions, and federal and state law[1] (Complaint ¶¶ 1–3). The action seeks damages and injunctive relief against five named highly placed state officials—the Governor, the Secretary of the Executive Office of Human Services, the Commissioner and Deputy Commissioner of the Department of Mental Health, the Commissioner of the Department of Public Health—in their official and individual capacities. They also seek to represent a class of "all other persons who are or may be at any time in the future inpatients at mental health facilities operated by the DMH and who have special or chronic medical or nursing care needs." (Complaint ¶ 22).

Three motions were referred to me: (1) Plaintiffs' Motion to Compel Murphy and Bennett to Permit Plaintiffs to Inspect, Photograph and Videotape Designated Facilities (Docket No. 50); (2) Plaintiffs' Motion to Compel Discovery (Docket No. 74); and (3) Plaintiffs' Motion for Appointment of Next of Friend for the Class (Docket No. 52). A hearing was held on these three motions on June 4, 1986.

Pending before the District Court are Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Class Certification. Neither of these motions was referred to me.

2. MOTION TO COMPEL DEFENDANTS MURPHY AND BENNETT TO PERMIT PLAINTIFFS TO INSPECT, PHOTOGRAPH AND VIDEOTAPE DESIGNATED FACILITIES AND FOR ENTRY OF PROTECTIVE ORDER

On June 13, 1985, plaintiffs requested defendants to permit them to enter and inspect, photograph and videotape eight DMH facilities "for the purpose of observing and determining the manner in which medical care is provided to clients of the facilities," including, but not limited to, the observation of the physical design and conditions of the facilities; the location, number, and types of wards, clinics and beds; the types, duties and location while on duty of personnel included in delivery of medical care; the location, type, number and working condition of medical care equipment and facilities; the location, design and staffing of laboratories, pharmacies, infirmaries and other medical care facilities; and the manner of making and maintaining medical records.

On July 1, 1985, defendants responded that they would permit "plaintiffs' counsel to enter and inspect the facilities listed in their motion at a mutually convenient time" and in a manner that would not interfere with the operation of such a facility, but that "photographing or videotaping of the facilities, personnel and patients will not be permitted."

On December 24, 1985, plaintiffs filed a motion to compel defendants to permit the photographing and videotaping. They also moved for a protective order to limit disclosure of any "sensitive photographic material" that contains an "individually identifiable image or recording of any DMH inpatient client" to certain counsel, assistants

---

**1.** The causes of action are brought under 42 U.S.C. § 1983, 29 U.S.C. § 794, and various state laws and regulations.

and experts. (Par. 1(c) and (d) of proposed protective order.)

On January 2, 1986, defendants opposed the motion to compel the "indiscriminate photographing and videotaping of patients at Department of Mental Health facilities." They argue, among other things, that the "proposed Protective Order does not adequately address the privacy interests of these non-party patients." Defendants have no objection to photographing and videotaping the named plaintiffs.

■ Plaintiffs' Motion to Compel is ALLOWED in part. Fed.R.Civ.P. 34 permits the entry on property for the purpose of inspection and photographing "of the property or any designated object or operation thereon." The defendants have raised no valid objections to the photographing or videotaping of the various facilities and objects on those facilities so long as such filming does not interfere with the operation of the facility.

Defendants have not articulated any basis for their objection to the photographing or videotaping of the types, numbers, duties and location of on duty medical care personnel at the facilities. As long as the filming is limited to the purposes outlined in plaintiffs' request, this request is ALLOWED.

Defendants' objection to the videotaping and photographing of non-party patients, who have not given their consent, has merit. The Court has not yet certified a class, and the proposed protective order does not deal with the valid concern that some mentally ill patients may not consent to being photographed and filmed by persons not designated by the Court to represent them. *Contrast New York State Ass'n for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 960 (2nd Cir.1983), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983) (counsel experts for certified class permitted to photograph class members and others to document evidence of violations of consent decree).

■ Fed.R.Civ.P. 26(b)(1) permits parties to obtain discovery regarding any matter "not privileged" which is relevant to the subject matter involved in the pending action. Evidentiary privileges in federal courts are governed by Fed.R.Evid. 501. *See American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1342 (5th Cir.1981); *In re Hampers*, 651 F.2d 19, 22 (1st. Cir.1981). This rule also applies to pretrial discovery disputes. 4 J. Moore, J. Lucas, and G. Gromeer, Jr., *Federal Practice*, ¶ 26.60[7] 223–4 (1984). Fed. R.Evid. 501 instructs this Court that recognition of a privilege "shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in light of reason and experience." Rule 501 envisions the flexible development of the federal common law of privilege on a case-by-case basis. *In Re Production of Records to Grand Jury*, 618 F.Supp. 440, 442 (D.Mass.1985). In developing a federal common law privilege, this Court must balance the particular federal interest involved against the rationale and comparative strength of the particular state evidentiary interest claimed. *Id.*

*In Re Hampers, supra*, the First Circuit suggested an analytical framework for balancing state and federal interests to determine whether, and to what extent, the federal common law of privilege would recognize a state privilege:

1. Would the Courts of Massachusetts recognize such a privilege?

2. Is the State's asserted privilege "intrinsically meritorious in our independent judgment"?

*Id.* at 22–23; *See also In Re Production of Records to Grand Jury, supra* at 443. This Court will follow that analytic framework in balancing the privacy interests of the non-party patients, asserted by the defendants, and plaintiffs' litigation needs.

The Commonwealth of Massachusetts has recognized the privacy rights of mentally ill patients in state mental hospitals. Mass.G.L. c. 111, § 70E(j) provides that each patient or resident of DMH facilities is entitled to "privacy during medical treatment or other rendering of care within the capacity of the facility." *See Rogers v.*

*Comm'r of Department of Mental Health,* 390 Mass. 489, 458 N.E.2d 308, 313–14 (1983) (each person has strong interest in being free from nonconsensual invasion of his bodily integrity). *See Commonwealth v. Wiseman,* 356 Mass. 251, 249 N.E.2d 610, 615 (1969), *cert. denied,* 398 U.S. 960, 90 S.Ct. 2165, 26 L.Ed.2d 546 (1970), *reh. denied,* 400 U.S. 954, 91 S.Ct. 231, 27 L.Ed.2d 260 (1970). This privacy interest is consistent with the privacy interests of mentally ill and disabled patients recognized by federal law and is intrinsically meritorious. *See Lora v. Board of Education of the City of New York,* 74 F.R.D. 565, 569 (E.D.N.Y.1977) *("Lora")* ("right to have intimate biographical details protected from exposure by the government"); *Garrity v. Thomson,* 81 F.R.D. 633, 635 (D.N.H. 1979). Videotaping of mentally ill patients, no matter how well-intentioned, could well involve an intrusion into the most private aspects of the lives of these patients.

■ However, under both federal and state law, privacy rights of patients are not absolute. *See Commonwealth v. Wiseman, supra* at 618; *Garrity v. Thomson, supra* at 636. This Court must weigh the merits of the privacy interests against plaintiffs' need for the information in light of their claim of violations of constitutional and statutory rights. Plaintiffs argue that the videotaping and photographing are necessary to enable plaintiffs' counsel and experts to assess the care and treatment provided by state-run institutions, and to preserve evidence of present conditions. However, at the hearing, defendants' counsel agreed that plaintiffs' experts could personally tour the facility. Expert assistance and testimony would adequately meet plaintiffs' litigation needs without unduly infringing on the privacy interests of the mentally ill.

■ Certainly, any competent in-patient could consent to being videotaped and photographed during the inspection of DMH facilities. Under state statutory and common law, even involuntarily committed patients are deemed competent until adjudicated incompetent. *Rogers v. Commis-*

*sioner of Department of Mental Health, supra* at 314. However, the procedure for obtaining consent should fully protect the rights of patients. The parties should obtain written consent of the patient in advance of filming; should explain to the patients the purpose of filming and the extent of release of any films; and should ascertain, where possible, if the patient has been adjudicated incompetent. *See e.g. Commonwealth v. Wiseman, supra* at 615 (State would have acted wisely if all releases reduced to writing).

The parties are instructed to negotiate a practical procedure for obtaining the consent of the patients during the inspections, and a protective order like the one proposed by plaintiffs, to limit release of any sensitive films. If the parties are unable to work out a mutually agreed upon procedure and protective order, they should submit their proposed procedures by July 18, 1986.

### 2. PLAINTIFFS' MOTION TO COMPEL DISCOVERY.

#### A. *Executive Privilege*

Defendants have objected to the production of fourteen documents on the grounds of the deliberative process privilege, also known as the "executive" or "governmental" privilege. Defendant Philip W. Johnston, the Secretary of the Executive Office of Human Services, ("EOHS"), has filed a formal claim of privilege in an affidavit which states that he has personally reviewed the documents (¶ 15); that the first eleven documents are memoranda from the budget director of EOHS to the Secretary (¶ 16) which contain frank assessments of alternative budget options (¶ 4); and that three additional documents are "communications between Mr. Johnston, the Secretary of the Executive Office of Administration and Finance, and a member of the Governor's staff" (¶ 8) which contain "frank discussions of fiscal policy and are part of the deliberative process by which policy is formulated at the highest level of state government" (¶ 9). Mr. Johnston fur-

ther states that "revealing these documents would have an extremely damaging effect on my ability to communicate with other executive officers and to formulate policy for EOHS in the future." (¶ 10)

Plaintiffs have moved to compel production of these documents.

As a preliminary matter, this is a federal question case, and this Court must follow Fed.R.Evid. 501 in determining whether such internal state communications are privileged under federal law "in the light of reason and experience." Once again, the *Hampers* analysis is helpful.

The federal courts have long recognized the deliberative process privilege with respect to certain intra-governmental federal deliberations. *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004–05, 85 L.Ed. 1429 (1941); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 151, 95 S.Ct. 1504, 1516, 1517, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir. 1980); *United States v. Exxon Corp.*, 87 F.R.D. 624, 636 (D.D.C.1980); *United States Dept. of Energy v. Brett*, 659 F.2d 154 (Temp.Emer.Ct.App.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 456 (1982). In *United States v. Exxon Corp.*, *supra*, the Court described the privilege as follows:

> It is clear that the government enjoys a privilege for intra agency memoranda and documents that record the deliberative, predecisional process leading to an agency decision. This privilege protects the "administrative reasoning process," *Kaiser Aluminum and Chemical Corp. v. United States*, 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958), or those thoughts, ideas, and analyses that encompass the

process by which an agency reaches a decision. *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1104, 85 L.Ed. 1429 (1941). Disclosure of predecisional documents would injure the consultative process within the government. *Kaiser Aluminum, supra,* 157 F.Supp. at 946. *Id.* at 636.

The privilege protects the government from the danger that ongoing regulatory processes would be subject to "delay and disrupt[ion]" if preliminary analyses were prematurely disclosed. *Chemical Manuf. Ass'n v. Consumer Product Safety Commission*, 600 F.Supp. 114, 117 (D.D.C.1984). The reason for the longstanding recognition of this privilege is to protect the free flow of information necessary to informed decision-making by a government agency. "[T]he privilege subserves a preponderating policy of frank expression and discussion among those upon whom rests the responsibility for making the determinations that enable government to operate." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C.Cir.1967), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

Under the *Hampers* guidelines, this Court must first determine whether the Courts of Massachusetts would recognize the privilege. Counsel have been unable to cite any opinions from the state appellate courts recognizing a deliberative process privilege for state intra-governmental communication.[2] Although the Massachusetts legislature has not expressly created a governmental privilege, it has excluded certain internal communications from the definition of "public records." Mass.G.L. c. 4,

**2.** Proposed Massachusetts Rule of Evidence 508 would have provided that "No other governmental privilege is recognized except as created by the Constitution or statutes of the Commonwealth." In an unpublished opinion *Beatrice Macioci v. Commissioner of Revenue*, No. 47464 (Superior Court, 1981) (Young, J) the Court, relying heavily on proposed Rule 508, ruled that there is no governmental privilege at common law in the Commonwealth of Massachusetts (P. 2), but ruled that under another proposed rule

430 the exclusion of the governmental privilege would not "unduly impair the operation of governmental processes in Massachusetts" because "under the common law as it now stands, the government is entitled to assert.... that they will be prejudiced by such disclosure, a matter which will be covered by proposed Rule 430." On December 30, 1982, a majority of justices of the Supreme Judicial Court decided not to adopt the proposed rules.

§ 7, clause twenty-sixth (d) exempts from mandatory disclosure:

> Inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency; but this subparagraph shall not apply to reasonably completed factual studies or reports on which the development of such policy positions has been or may be based.

Further, in *New England Medical Center, Inc. v. Massachusetts Rate Setting Commission*, 384 Mass. 46, 56, 423 N.E.2d 786, 792 (1981), the Supreme Judicial Court expressed concern about disruption of appropriate governmental regulatory processes by inquiry into the mental processes of agency decision-makers in the absence of extraordinary circumstances. Plaintiffs have not disputed that in a federal question case, there is a privilege for some state internal governmental deliberations but argue that their need for the documents outweighs the defendants' asserted need for secrecy.[3] Thus while state law is far from clear on the question, the legislature and courts have accorded internal governmental deliberations some protection from public disclosure.

The federal experience, as reflected in the cases cited above, demonstrates that protecting some internal communications has intrinsic merit. Frank communications between a cabinet secretary and the governor and between a cabinet secretary and his/her budget director concerning formation of budgetary options would certainly be chilled if such discussions were afforded no protection from public disclosure during pretrial discovery.

■ However, even under federal law, the deliberative process privilege is not absolute. The privilege protects only expressions of opinion or recommendations in intra-governmental documents; it does not protect purely factual material. *In Re Franklin National Bank Securities Litigation*, 478 F.Supp. 577, 581–82 (E.D.N.Y.

1979). Further Mass.G.L. c. 4, § 7 twenty-sixth clause (d) provides that "reasonably completed factual studies or reports" are public records.

■ Applying the policies underlying the deliberative process privilege as reflected in federal law and in the state legislative definition for public record, I *ALLOW* the motion to compel in part. The affidavit of Mr. Johnston failed to establish that he separated out and released to defendants those portions of the withheld documents which are not privileged. *See Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 505 (D.D.C.1985). Defendants are required to release any "reasonably segregable" non-privileged portion of the documents by July 18, 1986. *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 260 D.C.Cir. (1977).

Plaintiffs argue that the documents may contain highly relevant materials, particularly concerning their claims against the state officials in their individual capacity. At the June 4, 1986 hearing, neither party objected to an *in camera* review of the documents, or portions of documents, for which a privilege was asserted. Such review is necessary "in order to attempt to safeguard legitimate privileges" by balancing "the government's interest in nondisclosure against the defendants' interest in and need for the information." *Lundy v. Interfirst Corp., supra* at 505.

Accordingly, I order defendants to submit all withheld documents or portions thereof by July 18, 1986 for *in camera* inspection.

B. *Names, Positions and Personnel Information about DMH and DPH Medical Care Staff.*

Plaintiffs have requested the names, positions, and certain personnel information about "each person involved in the delivery of medical care to DMH inpatient clients."[4]

---

**3.** Plaintiffs also argue that defendants did not properly raise their claim of executive privilege but Mr. Johnston's affidavit seems to cure any defects.

**4.** Interrogatory 8 to defendant Murphy requests:
Identify the name of and position held by each person presently involved in the delivery of medical care to DMH Inpatient Clients,

They have also requested all documents relating to educational or training programs provided to any employee of the Department of Public Health (DPH) since 1982 regarding the delivery of medical care to DMH inpatient clients and persons with mental health care needs or behavioral problems.

■ Defendants have objected on two grounds. First, they argue that such information is privileged under Mass.G.L. c. 4, § 7 clause twenty-sixth (c) which excludes from the definition of "public records"

"(c) personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy; ..."

Defendants also cite Mass.G.L. c. 66A, § 1, known as the Fair Information Practices Act,[5] which provides limited access to "personal data," defined as

"any information concerning an individual which, because of name, identifying number, mark or description can be readily associated with a particular individual, provided, however, that such information is not contained in a public record, as defined in cl. twenty-sixth of section seven of chapter four...."

Defendants argue that these provisions make the information sought by plaintiffs absolutely privileged under state law.

Despite this assertion, the Massachusetts cases dealing with the privileges protecting employee information are not so clearcut. In *Pottle v. School Committee of Braintree*, 395 Mass. 861, 866, 482 N.E.2d 813, 816–17 (1985), the Supreme Judicial Court ruled that there is a presumption that records sought are public, and that the disclosure of some personnel information (there, the names and addresses of city employees) does not constitute an invasion of personal privacy unless it involves inti-

whether on a full-time, part-time or on call basis, including but not limited to all physicians, physician assistants, nurse practitioners registered nurses, licensed practical nurses, physical therapists, social workers, mental health assistants and other ancillary or support staff. Please include in your answer the name of a position held by each person whose responsibilities include the filing and maintenance of the medical records of DMH inpatient clients. Identify all other persons who have held each such position identified at any time since January 1, 1982.

Interrogatory 9 to defendant Murphy requests:

With regard to each person identified in your answer to Interrogatory 8, state that persons's:

(a) licensing status, if any, by any Massachusetts Board of Registration and the date(s) such licensure was obtained; (b) medical, nursing or professional training, if any, including, but not limited to, schools attended, degrees received, dates of graduation, certificates received which document completion of internship, residencies or other special training, the date each such certificate was issued, prior practice experience and the dates and places where said experience was obtained; (c) prior positions held with the DMH; (d) length of time employed in any capacity related to the delivery of medical care to DMH Inpatient Clients; (e) immediate supervisor, including his or her name an official title, while involved in the delivery of medical care to DMH Inpatient Clients; and (f) supervisory

duties and responsibilities while involved in the delivery of medical care to DMH Inpatient Clients; including, but not limited to, the names of all persons directly under his or her supervision, the job description of each such person, the nature of the supervision provided and the average amount of time spent per week in supervision of such person.

Document Request 49 to Callahan and Bennett:

All documents evidencing the qualification, length of employment, position and specific hours worked, of each person employed by the DMH to provide medical care at any DMH Inpatient Facility, including, but not limited to physicians, psychiatrists, physician's assistants, nurse practitioners, registered nurses, licensed practical nurses, physical therapists and social workers.

5. This statute seems to anticipate that the production of personal data may be compelled in court proceedings. Mass.G.L. c. 66A, § 2(k) requires holders of personal data to "maintain procedures to ensure that no personal data are made available in response to a demand for data made by means of compulsory legal process, unless the data subject has been notified of such demand in reasonable time that he may seek to have the process quashed." The case *Torres v. Attorney General*, 391 Mass. 1, 460 N.E.2d 1032 (1984), cited by defendants, involved an intra-governmental disclosure of personal data not required by compulsory legal process.

mate details of a highly personal nature. It held, "Public employees, by virtue of their public employment, have diminished expectations of privacy." *Id.* Here the defendants have not met their burden of demonstrating that the information concerning the qualifications and duties of medical care personnel at DMH facilities is so intimate that disclosure would be an unwarranted invasion of privacy. Plaintiffs are not seeking personnel evaluations, medical records or other such highly personal information. Further, plaintiffs do not seek entire personnel files but only certain information. "Not every bit of information which might be found in a personnel or medical file is necessarily personal" so as to fall within the statutory protection. *Globe Newspaper Co. v. Boston Retirement Bd.*, 388 Mass. 427, 435, 446 N.E.2d 1051, 1056 (1983). Indeed, it is hard to imagine how documents relating to educational or training programs provided to DPH employees would even fall within the privilege.

Even if the state were correct that the state evidentiary privilege would absolutely bar disclosure, under the *Hampers* analysis, this Court must examine whether such an absolute privilege is intrinsically meritorious. It is this Court's opinion that disclosure of a state employee's qualifications is not an unwarranted invasion of privacy. Defendants have not demonstrated that disclosure would have an adverse impact on the employer-employee relationship. Any limited privacy interests of the employees are outweighed by the plaintiffs' need for such information to press their claims that the quality of medical care is constitutionally deficient.

Accordingly, I rule that the information sought by plaintiffs is not absolutely privileged under Rule 26 and must be disclosed. However, if the state is concerned about full public access to some or all of the personnel information it can propose a protective order under Fed.R.Civ.P. 26(c) which will limit disclosure to certain qualified persons for purposes of this litigation.

Defendants' second objection is that the discovery requests are overly burdensome. They submit an affidavit of Gerald Morrissey, the deputy chief operating officer of DMH, who avers that producing the information requested by plaintiffs in Interrogatories 8 and 9 regarding delivery of medical care to clients at DMH inpatient mutual health facilities would involve compiling information regarding 15,600 employees ("to include mental retardation facilities, the figures should be doubled") (¶ 2). He also states that such information is not available in the computerized file and would have to be obtained through a manual search (¶¶ 4–7).

Particularly in light of the fact that no class has been certified, I find that the discovery requests are overly burdensome. At the hearing, defendants proposed limiting discovery to those providing medical care to certain named plaintiffs. However, plaintiffs are entitled to conduct discovery concerning the class which they seek to certify. *Yaffe v. Powers*, 454 F.2d 1362, 1367 (1st Cir.1972). In response to the Court's request for proposals to limit the burdensomeness of discovery, plaintiffs have proposed that the requested information be limited to eight named institutions, which include 4 of the 7 state mental hospitals and 4 of 9 mental health centers. I am not convinced that this proposal, which would still require production of vast amounts of information, strikes the appropriate balance between plaintiffs' right to relevant information without unduly burdening defendants.

According to the complaint, DMH has determined that about 200 patients have special medical or nursing care needs that are not being met (¶ 23). At the hearing DMH's counsel did not dispute that figure. Pursuant to Fed.R.Civ.P. 26(c), I ORDER that within thirty days of this order defendants produce the requested information for those persons providing medical care to every fifth individual on the DMH list of medically needy individuals. This ruling is without prejudice to plaintiffs' requesting additional information in the event that the class is certified or if the information pro-

duced indicates that additional personnel information is warranted.

### C. *Medical Records Concerning Non-Party Patients.*

Plaintiffs moved to compel the production of the medical records of the approximately 200 class members who the DMH has determined require more intensive or skilled nursing or medical care than is available at DMH facilities. (Complaint ¶ 23)

First, defendants object on the grounds that the medical records are privileged under state law which provides that medical records are "absolutely exempt from mandatory disclosure." They cite *Globe Newspaper Co. v. Boston Retirement Board, supra* at 438, 446 N.E.2d at 1051; Mass. G.L. c. 4, § 7; c. 66A, § 2; c. 123, § 36; c. 111, § 70. The affidavit of Gerald Morrissey states that the medical records contain "highly personal information regarding the client as the client's past medical and psychiatric history, present medical and psychiatric diagnoses, psychological and family history and present family involvement (family members named), past and current treatment plans, behavioral problems, psychological evaluations and profiles" and so forth. (¶ 12).

Plaintiffs argue that there is no absolute privilege associated with the medical records they seek, that the records of medical treatment are essential to any evaluation of the adequacy of medical care provided to DMH clients and that the proposed protective order adequately protects patient's privacy interests by limiting disclosure of the records to counsel and experts.

The reasoning in *Lora, supra,* (Weinstein, Jr.) is persuasive. *Lora* was a civil rights action brought by all black and hispanic children assigned to certain New York City schools for socially maladjusted and emotionally disturbed children. Plaintiffs sought production of fifty randomly selected diagnostic and referral files which, as in the instant case, included the results of psychological and psychiatric consultations or examinations, and other clinical

and "intensely personal information." *Id.* at 568. All parties agreed that if the files were supplied, the names and identifying data would be redacted. *Id.* The Court compelled disclosure of the records, holding:

"Only strong countervailing public policies should be permitted to prevent disclosure when, as here, a suit is brought to redress a claim for violation of civil rights under the Constitution. 42 U.S.C. § 1983. Enforcement is by private individuals but they are acting in the capacity of (private attorneys-general.) [citation omitted]

. . . . .

In determining whether disclosure in this case will unreasonably interfere with justifiable privilege expectations of students and their families four significant factors must be considered. First, is the identification of the individuals required for an effective use of the data? Second, is the invasion of privacy and risk to psychological harm being limited to the narrowist possible extent? Third, will the data be supplied only to qualified personnel under strict controls over confidentiality? Fourth, is the data necessary or simply desirable?

*Id.* at 579.

■ Following this analysis, which is consistent with the *Hampers* analytic framework, I find that state law does afford a privilege to the medical records of the mentally ill and this privilege is intrinsically meritorious. *See In Re Grand Jury Investigation, supra* (State privilege governing communications between a patient and social worker has intrinsic merit). Nonetheless, as in *Lora,* plaintiffs have demonstrated that the information is necessary for a full development of the facts in this litigation. *Garrity v. Thomson, supra* at 636.

■ I ALLOW the motion to compel subject to certain conditions. Plaintiffs have agreed that all references to the patients identity will be redacted prior to production. The protective order, already en-

tered by this Court, seems to meet the *Lora* criteria. It narrows disclosure to counsel, certain legal and clerical assistants and experts; it provides that the information shall be used only in connection with the preparation and trial of this action; and it contains other protections to minimize the invasion of the other patients' privacy. However the Court will consider any proposed modifications to the protective order which defendants consider necessary.

Second, defendants argue that production and redaction of the 210 files would be overly burdensome. Plaintiffs have proposed limiting production to the medical records of every fifth person on the list of 210. I ORDER that defendants produce the medical records for such persons by July 18, 1986. *See* P. 17 *infra*. Thus, defendants will be producing both the redacted medical records and responsible medical care personnel data for every fifth person on the list of 210. This ruling is without prejudice to plaintiffs' seeking additional records if the class is certified and if the initial production indicates that supplementation is warranted.

#### D. *Other Discovery Matters*

Plaintiffs have moved to compel four other categories of information. First, they seek identification of certain designated individuals who have performed various functions or have held supervisory positions relating to the delivery of medical care to DMH inpatients. Defendants had originally agreed to provide the current identities of such persons but claimed that producing the information back to 1982 was too onerous. In their opposition to the motion to compel, defendants agreed to provide certain information back to 1982. It is unclear to the Court whether there is still a dispute between the parties. Plaintiffs are instructed to renew their motion to compel if they are dissatisfied with the state's response.

Second, plaintiffs moved to compel documents related to conditions at Worcester State Hospital, but indicated at the hearing that the parties had worked out this disagreement.*

Third, plaintiffs moved to compel documents relating to the creation, funding and operation of facilities for mentally retarded DMH clients with health care problems or physical disabilities. Plaintiffs argue that this information is relevant to their claim that defendants' refusal to provide them with the same level of medical care and facilities provided to similarly situated mentally retarded clients violates their rights under the Equal Protection Clause of the Fourteenth Amendment, and their claim of due process violations. Defendants have moved for summary judgment on the Equal Protection and other claims. I ALLOW defendants' motion for a stay until the Court rules on the motion for summary judgment. At that time, I will be in a better position to determine whether the need for the documents justifies the burden of production.

Finally, plaintiffs have moved to compel production of contracts between the DMH and third-party medical care providers. At the hearing the parties indicated this dispute was resolved.

### 3. PLAINTIFFS' MOTION FOR APPOINTMENT OF NEXT FRIEND FOR THE CLASS (DOCKET NO. 52).

On December 24, 1985, plaintiffs filed this motion for appointment of a next friend for the class. The plaintiffs allege 1) that because of the serious mental and physical problems of the named plaintiffs and all other members of the class, they are not always able to cooperate with counsel in the prosecution of this action or to protect their own interests, and 2) that the next friend will protect the interests of the class members so that the litigation can proceed efficiently. (Docket No. 52). In support of this motion, they have filed the affidavit of Tamara S. Wolfson, one of the plaintiffs' attorneys, which states that in attempting to answer interrogatories, two of the named plaintiffs were able to assist counsel; one named plaintiff offered limit-

ed assistance; one named plaintiff had a legal guardian who acted on his behalf; and counsel sometimes had difficulty establishing meaningful communications with the three remaining plaintiffs. The affiant further states that the named plaintiffs were sometimes able to cooperate and other times were not, depending on their mental state. (Docket No. 54). Plaintiffs have proposed that Robert A. Ledoux, Esq., be appointed as next friend and have submitted his resume. (Docket No. 53).

Defendants have opposed the appointment of the next friend for the class on the ground that such an appointment would be premature since the class has not yet been certified. I agree. Plaintiffs have cited three cases involving the appointment of a guardian ad litem or next friend [6] in a class action brought by mental hospital patients. However, in none of these cases was a guardian ad litem or a next friend appointed for the class at this stage of the litigation prior to class certification. *Compare Dixon v. The Attorney General of the Commonwealth of Pennsylvania*, 313 F.Supp. 653 (M.D.Pa.1970) (a guardian ad litem was appointed for the seven named patients); *Goldy v. Beal*, 429 F.Supp. 640, 649 (M.D.Pa.1976) (the Court appointed a guardian ad litem when all of the prerequisites for class certification were met, except that an issue arose as to whether patients at a mental institution were capable of fairly and adequately protecting the interests of the class); *Huebner v. Ochberg*, 87 F.R.D. 449, (E.D.Mich.1980) (same). In the instant case defendants have raised various objections to the motion for class certification [7] (*see* Docket No. 71) and at this point it is unknown if the prerequisites of class certification will be met and/or how the class will be defined. Therefore, the plaintiffs' motion for appointment of a next friend for the class is denied without prejudice to being renewed (1) if the issue is subsequently raised that the plaintiffs are mentally incompetent and thus incapable of fairly and adequately representing the interests of the class; or (2) if a class is certified.

However, appointment of next of· friend for the named plaintiffs in their individual capacities and as putative class representatives may be appropriate. Plaintiffs' counsel has brought to the Court's attention the individual plaintiffs' "serious mental and physical problems" which result in their inability, at times, to cooperate with counsel in the prosecution of this action or to protect their own interests. *See* Affidavit of Tamara Wilson (Docket No. 54). The Court takes seriously plaintiff counsel's representation that the named plaintiffs are not fully able to protect their individual interests without a next friend. *See* Fed.R. Civ.P. 17(c); *Sullivan v. Judges of the Superior Court*, 271 Mass. 435, 437–38, 171 N.E. 490, 490–91 (1930).

The decision as to whether or not to appoint a next friend or guardian ad litem rests within the sound discretion of the Court. *Developmental Disabilities Advocacy Center Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir.1982). Rule 17(c) of the Federal Rules of Civil Procedure provides:

(c) *Infants or Incompetent Persons.* Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a

---

**6.** Prior to the adoption of Fed.R.Civ.P. 17(c), there was a distinction between guardian ad litem and next friend. However, the distinction was only formal and the functions of the two representatives were really the same. Therefore, the draftsmen of rules eliminated the distinction. *See* Wright & Miller, Federal Practice and Procedure: Civil § 1572. These terms are used interchangeably in this opinion.

**7.** Unlike the situation in *Goldy v. Beal, supra* and *Huebner v. Ochberg, supra,* the defendants have not opposed the motion for class certification on the ground that patients at a mental institution are not mentally capable of fairly and adequately protecting the interests of the class. (*See* Docket No. 71).

guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

A federal district court's power to appoint under Fed.R.Civ.P. 17(a) "has been broadly interpreted and has not been limited to the narrow construction of the words infant or incompetent person." Wright & Miller, *Federal Practice and Procedures, Civil* § 1570; *See Huebner v. Ochberg, supra* at 456–457 (where the court found that it could not rule that patients of a mental hospital were incompetent under state law, yet appointed a guardian ad litem or next friend because of a concern about the ability of the patients to comprehend the proceedings and to consult intelligently with counsel). In determining plaintiffs' competency to represent their interests in this litigation, this Court is guided by state law. *Huebner v. Ochberg, supra* at 456; *See also* Wright & Miller, *Federal Practice and Procedure:* § 1571; *Developmental Disabilities Advocacy Center, Inc. v. Melton, supra* at 285. Massachusetts law does not require an adjudication of incompetence under M.G.L. c. 201 § 6 in order to appoint a guardian ad litem or next friend. Under Mass.G.L. c. 201 § 34 such an appointment may be made for a "minor, mentally retarded person, autistic person, or person under disability or not ascertained or not in being." The power to appoint a guardian ad litem is not merely statutory but inherent in the court when it becomes necessary for the proper function of the court. *Superintendent of Belchertown State School v. Saikewicz,* 373 Mass. 728, 755, 370 N.E.2d 417, 433 (1977). Thus, under both Fed.R.Civ.P. 17(c) and state law, this Court has the discretion to appoint a guardian ad litem to protect persons who may be competent for some purposes, but not for prosecution of this action.

■ As to one of the named plaintiffs, counsel has represented that he has a duly appointed guardian. Therefore, the court will not appoint a next friend since a federal district court generally will not make such an appointment for a person who has a duly appointed representative. *Developmental Disabilities Advocacy Center, Inc. v. Melton, supra* at 285.

As to the six remaining plaintiffs, at this time the court merely has a general affidavit of one of the plaintiffs' attorneys which supplies no medical data or specific information on any of these individual patients. Since the court is not making the appointment for the class but for the plaintiffs individually, each of the plaintiffs' situations should be examined individually. *See Developmental Disabilities Advocacy Center, Inc. v. Melton, supra* at 285. Further, the court is troubled by counsel's representations at oral argument that the issue of appointment of a next friend has not been discussed with the individual plaintiffs. In *Rogers v. Comm'r. of the Dept. of Mental Health, supra* at 318, when an involuntarily committed mental patient has been adjudicated incompetent under Mass.G.L. c. 201 § 6 and the court is required to make a substituted judgment as to medical treatment, the court is required to attempt to ascertain the patient's desire. This is due in part to the state's recognition of the dignity and worth of an incompetent person and an attempt to afford that person the same panoply of rights and choices as it recognizes for competent persons. *Rogers v. Comm'r. of the Dept. of Mental Health, supra* at 315. Surely if such attempts are made with regard to individuals adjudicated incompetent in determinations of medical treatment, then the same attempts should be made for these plaintiffs, who have not been adjudicated incompetent, and are voluntarily committed,[8] and according to counsel's affidavit are, at least as to some plaintiffs and at least at some times, able to cooperate and capable of effective communication.

**8.** Plaintiffs' counsel represented at oral argument that none of the plaintiffs has been involuntarily committed.

Therefore, it is ORDERED that plaintiffs' counsel attempt to ascertain whether or not these six individual plaintiffs would assent to the appointment of a next friend to assist in this litigation. It is further ORDERED that plaintiffs' counsel submit either by medical records, a stipulation of counsel, *see Huebner v. Ochberg, supra* at 456, 457, or evidence from an expert, *see Philips v. Lowell Institution for Savings,* 214 Mass. 560, 101 N.E. 1065 (1913), evidence as to the disability of each of the named plaintiffs so that the court may make a proper evaluation as to the need for a next friend for those individual plaintiffs.

There are several other issues which must be decided if the named plaintiffs press their motion for appointment of a next friend. First, who will serve as the next friend? Plaintiffs have proposed the name of Robert A. Ledoux, Esq. Defendants have objected to Mr. Ledoux's appointment on the grounds that he serves on the Board of Directors of the Mental Health Legal Advisors Committee which has been "inextricably involved in the prosecution of this matter." (Docket No. 62). This representation raises concern that Mr. Ledoux, an attorney, would serve more in the capacity of another attorney than as a next friend of the attorney's clients. However, plaintiffs' counsel has represented that Mr. Ledoux has played no role in the litigation to date. This Court does not have an adequate record to determine whether to appoint Mr. Ledoux as a guardian. Defendant's counsel suggested at oral argument that if the court were to appoint a next friend, the parties should be able to agree on a name. Therefore, counsel are ORDERED to consult with each other and attempt to agree on the person to serve as a next friend, whether Mr. Ledoux or someone else. Plaintiffs' counsel is ORDERED to notify the court as to whether counsel have been able to agree on a person to serve. If counsel cannot agree, each party shall file a proposed name with the court, and a further hearing will be scheduled. Second, how shall the next friend be paid for expenses and services? Rule 17(c) is silent on the point. Sometimes these fees are paid out of the amount recovered and sometimes by one of the parties. *See* Wright & Miller, *Federal Practice and Procedure:* Civil § 1570; *See also* M.G.L. c. 201 § 35. Counsel are ORDERED to attempt to agree on a method of payment if a next friend is appointed. If counsel cannot agree, each counsel shall submit his proposal to the court.

Plaintiffs' counsel are ORDERED to file a written report on the above matters with the Clerk of Court by July 18, 1986. Defendants' counsel shall file a written response to plaintiffs' report by August 6, 1986. The court will notify counsel of the date of a further hearing, if warranted, on these matters.

SO ORDERED.