Robert Lee HALL, Plaintiff,

v.

David C. EVANS, et al., Defendants.

Civ. A. No. C85–1959A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 9, 1986.

Patricia E. Ratner, Smith, Gambrell & Russell, Atlanta, Ga., for plaintiff.

Michael E. Hobbs, Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Robert Lee Hall, a state prisoner, has filed this civil rights action pursuant to 42 U.S.C. § 1983 (1982) seeking damages. The gravamen of the complaint is the plaintiff's claim that prison officials have transferred him from institution to institution within the state penal system in retaliation for the exercise of his right to access to the courts. The matter is currently before the court on defendants' motion for summary judgment.

## STATEMENT OF FACTS

On August 1, 1979, plaintiff was ordered moved from the Bibb County Jail in Macon, Georgia, to the Georgia Diagnostic and Classification Center in Jackson, Georgia, as his initial assignment. (Defendants' Exhibit No. 1).

On December 3, 1979, plaintiff was ordered moved from the Georgia Diagnostic and Classification Center at Jackson, Georgia, to the Ware Correctional Institution for administrative purposes. (Defendants' Exhibit No. 2).

On December 17, 1979, the plaintiff was ordered from the Ware Correctional Institution to the Washington Building which is a part of the Middle Georgia Correctional Complex and which is now known as the Men's Unit. The reason for this transfer to the Washington Building was administrative. (Defendants' Exhibit No. 3).

On February 4, 1980, the plaintiff was transferred from the Washington Building to Georgia State Prison. The reason for this transfer was the plaintiff's request and his claims that he was in danger of bodily injury from other inmates. The plaintiff requested that he be transferred as soon as possible. (Defendants' Exhibits 4 and 5).

On April 14, 1980, while the plaintiff was incarcerated at Georgia State Prison in Reidsville, the plaintiff informed his counselor that he was having problems alleg-edly due to his having worked as a drug enforcement officer in the Bibb County Sheriff's Office. The plaintiff's counselor contacted a Major Singleton who was the supervisor of the drug squad in Bibb County and determined that plaintiff had never been employed by that agency as an officer. (Defendants' Exhibit No. 6).

However, on May 22, 1980, the plaintiff wrote then-Governor George Busbee requesting his assistance in obtaining a transfer and alleging that the inmates at Georgia State Prison had a contract out to have him killed. (Defendants' Exhibit No. 7). On June 2, 1980, Governor Busbee acknowledged plaintiff's letter and informed the plaintiff that he was directing the matter to the attention of Commissioner David C. Evans. (Defendants' Exhibit No. 8). Subsequent thereto, the plaintiff wrote another letter to Governor Busbee again asking for help in obtaining a transfer from Georgia State Prison. (Defendants' Exhibit No. 9). This letter was again acknowledged by Governor Busbee on December 3, 1980. (Defendants' Exhibit No. 10). On January 20, 1981, Regional Investigator John L. Bethea wrote a memorandum to Mr. Erskin Martin, Director of Inmate Affairs, explaining his investigation into the plaintiff's allegations that his life was in danger, and recommending that the plaintiff be transferred. (Defendants' Exhibit No. 12). On February 4, 1981, the plaintiff was ordered moved from Georgia State Prison to Rutledge Correctional Institution in Columbus, Georgia. (Defendants' Exhibit No. 14).

Defendants contend that on July 7, 1981, Superintendent Leland Q. Linahan of Rutledge Correctional Institution teletyped the central office of the Georgia Department of Corrections requesting that the plaintiff be transferred from Rutledge Correctional Institution since he had been in segregation since June 17, 1981, and had created problems in the inmate population. (Defendants' Exhibit No. 15). On July 8, 1981, the plaintiff was ordered moved from Rutledge Correctional Institution to Coastal Correctional Institution in Garden City, Georgia,

for administrative reasons. (Defendants' Exhibit No. 16).

Plaintiff disputes this and contends that a material question of fact exists as to whether this transfer was for administrative reasons, or rather resulted from plaintiff's drafting a complaint against Mr. Linahan on behalf of Ms. Linda Rogers, an inmate at the Georgia Womens Correctional Institution at Hardwick, Georgia. Shortly thereafter, all of his outgoing mail to Ms. Rogers was stopped, and plaintiff contends that he was put in segregation. Plaintiff contends that the "administrative reason" was a pretext, in light of the fact that plaintiff was primarily responsible for drafting the complaint against Mr. Linahan.

Defendants contend that on September 9, 1981, the plaintiff was ordered moved from Coastal Correctional Institution to Georgia State Prison at Reidsville, Georgia, for medical reasons. (Defendants' Exhibit No. 17).

Plaintiff disputes this and contends that there is a material question of fact as to whether he was transferred for medical reasons or in retaliation for a lawsuit he and two inmates filed against the correctional staff at Coastal Correctional Institution. Plaintiff alleges that the case, *Robert Lee Hall, et al. vs. Governor George Busbee, et al.*, Civil Action No. CV481–384, was filed in the United States District Court for the Southern District of Georgia on September 10, 1981 and that plaintiff was transferred out of Coastal Correctional Institution within days of commencing that lawsuit.

On December 29, 1981, the Georgia State Board of Pardons and Paroles requested that the Department of Corrections consider the plaintiff for a work release program prior to his being released on parole. (Defendants' Exhibit No. 18). On January 5, 1982, in response to the Parole Board's recommendation, the plaintiff was moved from Georgia State Prison in Reidsville, Georgia, to the Macon Transitional Center in Macon, Georgia. (Defendants' Exhibit Nos. 19 and 19A).

While housed at the Macon Transitional Center as a pre-release inmate, the plaintiff escaped from authorities on February 1, 1982. (Defendants' Exhibit No. 20). The plaintiff was recaptured on February 3, 1982, in Arkansas. (Defendants' Exhibit No. 21).

After being returned from Arkansas, the plaintiff was assigned to Central Correctional Institution in Macon, Georgia, on February 15, 1982. (Defendants' Exhibit No. 22).

On March 10, 1982, the plaintiff was transferred from Central Correctional Institution to Walker Correctional Institution in Rock Springs, Georgia, due to his escape. (Defendants' Exhibit No. 23).

On May 4, 1982, Superintendent J. Doug Williams of Walker Correctional Institution teletyped the inmate classification section of the central office of the Georgia Department of Corrections requesting that the plaintiff be transferred away from that institution. Defendant contends the reason for this request was that the plaintiff had been encouraging unrest among the inmate population and the warden had been advised by several inmates that the plaintiff's safety was in danger. Defendant contends the warden also recommended that the plaintiff be transferred to an institution at which the plaintiff had filed litigation until the litigation was resolved since the warden felt that transferring him from one institution to another would only add to the number of suits that the plaintiff would file. (Defendants' Exhibit No. 24). Thereafter, plaintiff was transferred to Montgomery Correctional Institution in Montgomery County, Georgia. (Defendants' Exhibit No. 24).

Plaintiff does not dispute the existence of the teletype (Defendants' Exhibit No. 24). However, plaintiff contends that the document indicates that plaintiff was transferred in retaliation for his filing lawsuits.[1]

---

1. The text of the teletype is as follows:

Robert Hall EF–12077 was received at Walker

On May 13, 1982, pursuant to the request of Warden L. Keith Turner of Montgomery Correctional Institution, the plaintiff was again transferred from Montgomery Correctional Institution to the Men's unit at Hardwick, Georgia. Defendant contends the reason for this transfer was that the plaintiff had created problems in the general population at that institution by "downgrading" the medical department and two correctional officers who had carried him on a work detail in 1978 when he was injured by a bush axe. In addition, due to the unrest that plaintiff had allegedly created, defendant contends the warden at Montgomery Correctional Institution had placed the plaintiff in administrative segregation. Further, defendant contends that since that institution was on emergency overload, more room was needed to accommodate the inmate population. (Defendants' Exhibits 25 and 26).

Plaintiff disputes this and contends that there is a material question of fact as to whether he was transferred in retaliation for filing lawsuits. Plaintiff argues that he was never in general population at Montgomery Correctional Institution. Upon arriving there, plaintiff contends he saw a Mr. Joe Martin, one of the defendants in *Hall v. Sharpe, et. al.*, Civil Action No. CV450–388 (M.D.Ga., Savannah Div.). Immediately thereafter, plaintiff alleges he was put in the visitation room until he was taken to Warden Turner's office. Plaintiff alleges he was then told that he would be transferred right away because he could not get along with the prison staff. Plaintiff contends he was in segregation until he was transferred approximately one week later. (Affidavit of Robert Lee Hall, ¶ 5).

On August 9, 1982, the plaintiff was transferred from the Men's Unit at Hardwick, Georgia, to the Rivers Unit for administrative reasons. The Men's Unit and the Rivers Unit are both part of the Middle Georgia Correctional Complex at Hardwick, Georgia. (Defendants' Exhibit No. 27).

On November 17, 1982, the plaintiff was transferred from the Rivers Unit to Coastal Correctional Institution at Garden City, Georgia, for a medical consultation with Dr. Harvey Conklin concerning the plaintiff's hand injury. (Defendants' Exhibits 28 and 29).

On November 23, 1982, the plaintiff was transferred back to Rivers Unit, which was at that time his permanent assignment. (Defendants' Exhibit No. 30).

On July 11, 1983, the plaintiff wrote a letter to Commissioner David C. Evans complaining that due to his cooperation in an institutional investigation, he felt that he could no longer live in the general inmate population at the Rivers Unit. The plaintiff in that letter asked that he be transferred to the Georgia Diagnostic and Classification Center at Jackson, Georgia, and put in administrative segregation until he was released from prison. (Defendants' Exhibit No. 31(A)(B)). On July 18, 1983, plaintiff wrote to Mr. A.R. Reed, Classification Supervisor, at the Georgia Department of Offender Rehabilitation in Atlanta. In this letter, plaintiff again expressed his fear that his life was in danger and requested that he be transferred to the Augusta Correctional and Medical Institution in Augusta, Georgia. The plaintiff also requested that he be transferred to Augusta to receive treatment for his hand. In this letter, the plaintiff stated that he could

---

CI on June 19, 1981. As most people are aware inmate Hall is involved in extensive litigation against the department for an injury sustained several years [ago] at Montgomery CI. He is also involved in filing 1983 law suits in every area where [he] can conjure up some kind of reason to file one. I personally feel that transferring him from one institution to another across the state is only going to add to the chain of suits he files everywhere he goes and the department and the Attorney General's office will ultimately have to answer

whether they have validity or not. Inmate Hall is *encouraging unrest among the inmate population* and *I have been advised by several inmates that his safety is in danger.* I strongly feel that inmate Hall should be transferred to an institution where litigation has already been filed until this litigation has been resolved. *I also feel that he needs to be transferred for his own safety due to the way in which he conducts himself in the inmate population.* (Emphasis supplied).

not be transferred to Georgia State Prison, Jack T. Rutledge Correctional Institution, Walker Correctional Institution, Central Correctional Institution, Ware County Correctional Institution, or Coastal Correctional Institution. On July 20, 1983, Dr. William A. Hopkins, M.D., Medical Director/Health Services, Georgia Department of Corrections acknowledged a letter from the plaintiff dated July 11, 1983, and indicated that he could not grant the plaintiff's request that he be transferred to a prison in Connecticut.

On July 21, 1983, superintendent Thomas C. Jones of the Rivers Unit teletyped a request to the central office of the Georgia Department of Corrections requesting that the plaintiff be transferred for his own protection. The superintendent indicated that the plaintiff had testified against other inmates who had committed a theft in the inmate property room. (Defendants' Exhibit No. 35). On July 22, 1983, plaintiff was ordered transferred from Rivers Correctional Institution to Metro Correctional Institution pursuant to the requests of Superintendent Jones. (Defendants' Exhibit No. 36).

On September 9, 1983, Alexander Willis, investigator, wrote a memorandum to the Director of Inmate Affairs, Erskine Martin, indicating that since the plaintiff had been transferred to Metro Correctional Institution from the Middle Georgia Complex, that there would be no reason to further investigate the plaintiff's claims that his life was in danger. (Defendants' Exhibit No. 37).

On October 16, 1983, the plaintiff again wrote the Governor of Georgia complaining that other inmates at Metro Correctional Institution were trying to have him killed. The plaintiff, in his letter, requested the assistance of the Governor in having himself placed in protective custody at either the Georgia Diagnostic and Classification Center in Jackson or Georgia State Prison. (Defendants' Exhibits 38 and 38A). On September 13, 1983, Medical Director William A. Hopkins, M.D., wrote a memorandum to Physicians Assistant Liz Kyte at Metro Correctional Institution concerning plaintiff's hand. In this memorandum, Dr. Hopkins stated that his plan was to wait for the orthopedic and hand clinic to open at Augusta Correctional and Medical Institution at which time the plaintiff would be transferred to that institution. (Defendants' Exhibit No. 39). On May 15, 1984, a memorandum was written by Superintendent Elton F. James of Metro Correctional Institution to the Director of Inmate Classification seeking the transfer of the plaintiff, who was at that time incarcerated in administrative segregation allegedly in order to make space for disciplinary cases that require isolation. Superintendent James indicated that there were only 15 cells for isolation and segregation and that Metro Correctional Institution was taking five parole revocation inmates each week, thereby taking up all of its isolation and administrative segregation space. (Defendants' Exhibits 40, 41).

On June 22, 1984, defendant contends a teletype was sent to the Director of Inmate Administration from Superintendent James of Metro Correctional Institution indicating that the plaintiff had requested a transfer to the Georgia Industrial Institute at Alto, Georgia, for protective custody. In the teletype, Superintendent James allegedly indicated that the plaintiff claimed that he had been threatened by another inmate. Defendant contends that on July 5, 1984, the plaintiff was ordered transferred from Metro Correctional Institution to Augusta Correctional and Medical Institution pursuant to Superintendent James request in order to remove the plaintiff from the inmate population in Metro Correctional Institution. (Defendants' Exhibits 42 and 43).

Plaintiff does not dispute the contents of the letter to Governor Busbee. (Defendants' Exhibits 38 and 38A). Plaintiff does not dispute the existence of the other letters. (Defendants' Exhibits 39, 40 and 41). However, plaintiff asserts that he did not state that his life was in danger at the time of that memo (Affidavit of Robert Lee Hall, ¶ 6). Therefore, plaintiff claims there is a material question of fact as to the reason the prison sought to transfer plain-

tiff and whether his lawsuits were the primary motivation.

Although plaintiff admits that the documents stating that he requested a transfer, (Defendants' Exhibits 42 and 43) speak for themselves, plaintiff disputes defendants' characterization. (Affidavit of Robert Lee Hall, ¶ 6). Plaintiff's Affidavit states that he did not request to be transferred. Moreover, plaintiff contends he would not have asked to be transferred to Alto, because he knew Alto was only for juveniles and he was therefore too old to go to that institution. *Id.* Plaintiff further asserts that, aside from not requesting to be transferred, he was attempting to prevent being transferred at that time. (Affidavit of Robert Lee Hall, ¶¶ 6 and 7). Plaintiff contends that there is a material question of fact as to whether his transfer on July 5, 1984 from Metro Correctional Institution to Augusta Correctional and Medical Institution was in retaliation for his filing lawsuits.

On May 22, 1985, the plaintiff wrote a letter to Mr. Ron Whitaker, the Chief Counselor at Augusta Correctional and Medical Institution, requesting that he be transferred back to Georgia State Prison at Reidsville, Georgia, in order to make use of that institution's law library. Since the plaintiff had previously complained that his life was in danger at Georgia State Prison, he executed a statement for the record on June 12, 1985, reiterating his request that he be transferred to Georgia State Prison in order to make use of the legal assistance available there. He indicated that the transfer was justifiable "when the threats and/or coercion of inmates at Georgia State Prison are no longer a threat to me, some of which have been transferred, etc." (Defendants' Exhibits 46 and 47). On June 25, 1985, the plaintiff was ordered transferred from Augusta Correctional and Medical Institution to Georgia State Prison in Reidsville, pursuant to the plaintiff's request. (Defendants' Exhibit No. 49).

## DISCUSSION

Plaintiff contends prison officials have transferred him from institution to institution within the state penal system in retaliation for the exercise of his right to access to the courts as a frequent litigant and "jailhouse lawyer". Such an allegation establishes a claim if the decision to transfer was made by reason of his exercise of this right. *McDonald v. Hall,* 610 F.2d 16 (1st Cir.1979); *Cf. Mount Healthy City Board of Ed. of Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (teacher without entitlement to reinstatement may nevertheless establish a claim if decision not to rehire was made in retaliation for his exercise of First Amendment rights). It is not necessary that plaintiff establish defendants actually intended to violate his constitutional right, but only that their acts had that effect. *Laaman v. Perrin,* 435 F.Supp. 319 (D.N.H.1977) *cited in McDonald supra* at 18.

In *McDonald v. Hall, supra,* the court in reversing the dismissal of a similar action noted in dicta:

> The appellant will face a substantial burden in attempting to prove that the actual motivating factor for his transfer was as he alleges. Plaintiff must prove that he would not have been transferred "but for" the alleged reason. See *Mt. Healthy City Board of Ed. of Doyle,* 429 U.S. 274 [97 S.Ct. 568, 50 L.Ed.2d 471] (1977). Moreover, the requirement of a "but for" showing together with the wide latitude afforded prison officials in ordering transfers may make summary judgment, particularly appropriate. [Citations omitted].

*McDonald supra,* at 18–19. *Accord Murphy v. Missouri Department of Correction,* 769 F.2d 502, 503 (8th Cir.1985); *Simmat v. Manson,* 554 F.Supp. 1363, 1374 (D.Conn.1983).

The First Circuit, however, recently clarified this language where parties seized upon the *McDonald* dicta to argue that the burden on a party moving for summary judgment is diminished in the prison context generally. The circuit court in rejecting this notion reaffirmed that Fed.R.Civ.P. 56(c) does not permit varying procedural requirements according to the kind of case

being heard, and that *McDonald* should not be read as doing so. *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63 (1st Cir. 1984) n. 2. Courts have recognized that due to the strongly sanctioned reluctance of federal courts to intervene in the internal affairs of prisons a court should presume that an administrative transfer is made for legitimate penological concerns. *Laaman v. Perrin*, 435 F.Supp. 319 (D.N. H.1977).

■ Restated simply then, the appropriate standard in a case such as this is that plaintiff must prove that he would not have been transferred "but for" his litigation activities. This standard is not to interfere, however, with the operation of the proper burdens on summary judgment. As recently interpreted in *Celotex v. Catrett,* —— U.S. ——, 106 S.Ct. 3548, 91 L.Ed.2d 265 (1986), Rule 56(c) requires that once the movant has identified those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any" that demonstrate the insufficiency of the non-movant's evidence, the burden shifts to the non-moving party "to go beyond the pleadings and by his own affidavits ... designate 'specific facts showing there is no genuine issue for trial.'" *Id.* at ——, 106 S.Ct. at 2553.

■ Under a "but for" standard, this means if defendant has contested plaintiff's allegations with specific facts, plaintiff must rebut these facts with specific facts of his own. So long as there is an *unrebutted,* rational and nondiscriminatory basis for defendants' acts, the transfers are not impermissibly exaggerated responses. *Laaman supra* at 328. Accepting *arguendo* that at least one of the reasons for each of plaintiff's transfers was his litigiousness where defendant demonstrates that there were other legitimate reasons that plaintiff was transferred, plaintiff must rebut *each* with specific evidence or face summary judgment for failure to show a genuine dispute as to whether his jailhouse litigation was the "but for" cause

of the transfers. Plaintiff has failed to do so.

Regarding plaintiff's July 8, 1981 transfer from Rutledge Correctional Institution to Coastal Correctional Institution, defendant contends the transfer was made for administrative reasons. In support, defendant shows the teletype of Superintendent Leland Q. Linahan of Rutledge CI to the central office of the Georgia Department of Corrections which states plaintiff was causing disruption within the inmate population by mentioning a suit brought against Linahan by Ms. Linda Rogers, an inmate at the Georgia Women's Correctional Institution at Hardwick, Georgia. (Defendants' Exhibit 15). Plaintiff counters that the transfer resulted from plaintiff's drafting a complaint against Linahan on behalf of inmate Linda Rogers. Plaintiff produces no evidence, including no sworn testimony in his own affidavit, that he drafted the complaint. Likewise, plaintiff fails to rebut defendants' evidence that he was disrupting the inmate population. Thus, there is unrebutted evidence of a valid reason for the transfer, and therefore, no jury question remains as to whether plaintiff's litigation activity were the "but for" cause of the transfer.

With respect to plaintiff's September 9, 1981 transfer from Coastal Correctional Institution to the Georgia State Prison at Reidsville, defendant contends the transfer was made for medical reasons. (Defendants' Exhibit 17). Plaintiff contends there is a question of fact as to the reason for this transfer, however, plaintiff produces no evidence to rebut defendants' evidence that the reason was medical. There remains an unrebutted, valid reason for the transfer. Thus, no jury question remains as to whether plaintiff's litigation constitutes a "but for" cause of the transfer.

Regarding plaintiff's transfer on or about May 4, 1982, from Walker Correctional Institution to Montgomery Correctional Institution, Defendants' contend the transfer was made because plaintiff was creating unrest at the prison and out of fear that plaintiff's safety might be jeopar-

dized there. In support, defendant shows the teletype of Superintendent J. Douglas Williams of Walker CI which stated that the reason for the request was that plaintiff had been encouraging unrest among the inmate population and the warden had been advised by several inmates that plaintiff's safety was in danger. (Defendants' Exhibit 24). Plaintiff contends the teletype shows that plaintiff was transferred in retaliation for his filing lawsuits. Plaintiff produces no evidence to rebut defendants' evidence of two legitimate reasons for the transfer: (1) unrest and (2) plaintiff's own safety. Therefore, no jury question remains as to whether plaintiff's litigation activities were the "but for" cause of his transfer. Defendants' have demonstrated two unrebutted, valid reasons for their actions.

With respect to plaintiff's May 13, 1983 transfer from Montgomery Correctional Institution to the Men's Unit at Hardwick, defendant contends the reasons for the transfer were problems plaintiff caused in the inmate population and overcrowding in the administrative segregation facilities where plaintiff was placed due to that unrest. (Defendants' Exhibits 25 and 26). Plaintiff contends by affidavit that he was never in the general population at Montgomery CI, and therefore, could not have caused unrest among the inmates there. (Hall Affidavit, ¶ 5). Accepting plaintiff's statement as true, plaintiff has nevertheless has failed to rebut defendants' evidence that a valid reason for his transfer was overcrowding in the administrative segregation facilities where plaintiff claims he spent his entire incarceration at Montgomery. Thus, there remains an unrebutted, valid reason for the transfer and no jury question remains that plaintiff's litigation was the "but for" cause of this transfer.

Regarding plaintiff's July 5, 1984 transfer from Metro Correctional Institution to Augusta Correctional and Medical Institution, defendants contend that plaintiff requested this transfer and that such was necessitated by overcrowding in the Metro CI segregation facilities. In support, defendants show the court a memorandum by Superintendent Elton F. James of Metro CI to the Director of Inmate Classification seeking transfer of plaintiff to make more space for disciplinary cases. Superintendent James indicated that because there were only 15 cells for isolation and segregation at Metro and Metro was accepting five parole revocation inmates a week, its isolation and segregation space was overcrowded (Defendants' Exhibits 40 and 41). Second, defendants show the court a teletype from Superintendent James that plaintiff had requested a transfer to Georgia Industrial Institute for protective custody. (Defendants' Exhibits 42 and 43). Plaintiff rebuts defendants' evidence that plaintiff had requested a transfer by his affidavit testimony. (Hall Affidavit ¶ 6). Plaintiff's affidavit states that he did not request to be transferred. Moreover, he would not have asked for a transfer to the Georgia Industrial Institute because he knew that institution housed only juveniles. However, plaintiff fails to rebut by any specific evidence defendants' evidence that a valid reason for the transfer was overcrowded conditions in the Metro segregation facilities. An unrebutted, valid reason for the transfer remains, and therefore, no jury question remains as to whether plaintiff's litigation activities constituted the "but for" cause of his transfer. All other statements of material fact by defendants are undisputed.

The court feels no genuine issue of material fact remains for resolution at trial. Accordingly, the court GRANTS defendants' motion for summary judgment. This action terminates the matter and the Clerk is directed to enter judgment for defendants.